**BELTERRA RESORT INDIANA, LLC, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0605–TA–49.

Tax Court of Indiana.

Feb. 4, 2009.

Stephen H. Paul, Brent A. Auberry, Fenton D. Strickland, Baker & Daniels LLP, Indianapolis, IN, Attorneys for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, John D. Snethen, Matthew R. Nicholson, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT[1]

FISHER, J.

Belterra Resort Indiana, LLC (Belterra) appeals the Indiana Department of State Revenue's (Department) proposed assessment of use tax for the 2000 tax year (year at issue). Although the parties raise several issues in their motions, the dispositive issue in this case is whether Belterra's acquisition of its riverboat casino is subject to use tax.

### FACTS AND PROCEDURAL HISTORY

Belterra is a Nevada corporation that owns and operates the Belterra Casino Resort, which consists of a hotel and riverboat casino (Miss Belterra), in Switzerland County, Indiana. Pinnacle Entertainment, Inc. (Pinnacle), a Delaware corporation, is Belterra's parent company.

On September 10, 1999, Pinnacle contracted with Alabama Shipyard, Inc. to construct the Miss Belterra. On July 24, 2000, Alabama Shipyard conveyed title to and possession of the Miss Belterra at its dock in Mobile, Alabama, to Pinnacle. Pinnacle paid no Alabama sales tax on its acquisition of the Miss Belterra. On July 25, 2000, Pinnacle transferred title to the Miss Belterra to Belterra while the boat was in international waters in the Gulf of Mexico. In their written consent to transfer the Miss Belterra, Pinnacle's Board of Directors provided that the transfer of the Miss Belterra was a capital contribution for which no consideration was received. At the time it transferred the Miss Belterra, Pinnacle owned a 97% interest in Belterra. In October of 2000, Belterra began operations of its hotel and casino. In August of 2001, Pinnacle acquired the remaining 3% interest in Belterra.

In 2002, the Department conducted a sales and use tax audit of Belterra for the year at issue. On October 4, 2002, the Department issued a proposed use tax assessment against Belterra on its acquisition of the Miss Belterra. Belterra timely protested the proposed assessment. On April 24, 2006, after conducting a hearing on the matter, the Department issued a letter of findings (LOF) denying Belterra's protest.

Belterra filed this original tax appeal on May 23, 2006. The Court conducted a hearing in the matter on December 3,

---

1. On May 11, 2007, Belterra filed a motion for summary judgment. On June 18, 2007, the Department filed a motion for judgment on the pleadings. In its response to the Department's motion for judgment on the pleadings, Belterra submitted a second affidavit of Chris Plant. (See Hr'g Tr. at 24–27.) The Court now ADMITS the Chris Plant affidavit into evidence and, because it is outside the pleadings, hereby converts the Department's motion for judgment on the pleadings into a motion for summary judgment. See Ind. Trial Rule 12(C).

2007. Additional facts will be supplied as needed.

## STANDARD OF REVIEW

Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party demonstrates that it is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Williams v. Indiana Dep't of State Revenue,* 742 N.E.2d 562, 563 (Ind. Tax Ct.2001).

## DISCUSSION AND ANALYSIS

■ Indiana's use tax is "[a]n excise tax ... imposed on the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a retail transaction, regardless of the location of that transaction or of the retail merchant making that transaction."[2] IND.CODE ANN. § 6–2.5–3–2(a) (West 2000) (footnote added). Thus, the Miss Belterra is subject to use tax if it is stored, used, or consumed in Indiana and was acquired in a retail transaction. *See id.*

Belterra contends that it does not owe the use tax because it did not acquire the Miss Belterra in a retail transaction. (*See* Pet'r Mem. in Supp. of [its] Mot. for Summ. J. (hereinafter, Pet'r Br.) at 6–7.) More specifically, Belterra argues that "[a]s manifested in the plain language of Indiana's use tax statutes, the General Assembly intended to apply the use tax only where personal property, such as the [Miss Belterra], has been transferred to a tax-payer for consideration." (Pet'r Br. at 7.)

Because it did not give consideration, Belterra contends it is not liable for use tax on the Miss Belterra. (*See* Pet'r Br. at 12.) The Department, on the other hand, argues that Belterra owes the tax because the Miss Belterra was acquired in a retail transaction (albeit by someone other than Belterra), no sales tax was paid on the transaction, and it was subsequently used in Indiana. (*See* Joint Stip. Ex. 1 at 4.) The Department, however, is incorrect.

■ "Indiana's use tax is primarily designed to reach out-of-state sales of tangible personal property that is subsequently used in Indiana." *Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue,* 865 N.E.2d 725, 727 n. 4 (Ind. Tax.Ct.2007), *review denied.* For this reason, the use tax is "complementary" to Indiana's sales tax. *Morton Bldgs., Inc. v. Indiana Dep't of State Revenue,* 819 N.E.2d 913, 915 (Ind. Tax Ct.2004). "This complementary formulation exists to ensure that the Indiana sales tax may not be avoided by purchasing products in states where there is no sales tax or where there is a lower sales tax." *Id.* "Accordingly, the use tax bites where the sales tax does not."[3] *Id.* (footnote added).

■ As a result of this complementary relationship, Indiana's use tax may only be imposed on retail transactions; that is, transactions where consideration is given in exchange for the property. *See* IND. CODE ANN. § 6–2.5–4–1(b) (West 2000) (defining "selling at retail" as a transfer of property for consideration). *See also Monarch Beverage Co. v. Indiana Dep't of*

---

**2.** Although irrelevant for purposes of this case, the use tax is also imposed on a vehicle, aircraft, or watercraft that was acquired in an isolated or occasional sale, and is required to be titled, licensed, or registered by this state for use in Indiana. IND.CODE ANN. § 6–2.5–3–2(b) (West 2000).

**3.** Indeed, while Indiana's use tax is imposed on the act of "storing, using, or consuming" tangible personal property in Indiana, it is computed as a percentage of the price by which the tangible personal property was acquired or purchased. *See* A.I.C. §§ 6–2.5–3–2(a), –3.

*State Revenue,* 589 N.E.2d 1209, 1210 (Ind. Tax Ct.1992) (noting that Indiana's sales and use taxes are excise taxes imposed "on sales transactions involving buyers and sellers"). Moreover, the person liable for the use tax is the person who acquired the property in the retail transaction. *See* IND.CODE ANN. § 6–2.5–3–6(c) (West 2000). *See also* IND.CODE ANN. § 6–2.5–2–1(b) (West 2000) (noting that "[t]he person who acquires property in a retail transaction is liable for the [sales] tax on the transaction"); *Maurer v. Indiana Dep't of State Revenue,* 607 N.E.2d 985, 990 (Ind. Tax Ct.1993) (noting that use tax may not be imposed on an automobile won as a prize because the taxpayer "did not acquire it in a sale at all"); JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, 2 STATE TAXATION § 18.04[2][c] (3d ed.2000) (explaining that a donee of a gift is not liable for use tax because the "[d]onee's use is not complementary to a taxable sale (i.e., there is no consideration and the transfer to Donee clearly would not be subject to sales tax)"). Here, although Belterra used the Miss Belterra in Indiana, it did not acquire it in a retail transaction.[4]

Alternatively, the Department argues that Belterra furnished consideration for the Miss Belterra when it either transferred the remaining three percent of its stock to Pinnacle or when it agreed to operate the Miss Belterra as a casino. (Resp't Br. [in Supp. of] its Mot. for J. on the Pleadings at 22–23; Hr'g Tr. at 30–32.) The Department, however, has not provid-

ed any evidence that Belterra gave the three percent of Belterra's stock in exchange for the Miss Belterra. Conversely, Belterra has provided an affidavit indicating that Pinnacle acquired the remaining Belterra stock from an independent third-party. (Plant Aff. ¶ 2–4, Nov. 28, 2007.) In light of this affidavit, the Court concludes that Belterra did not give consideration in the form of stock in exchange for the Miss Belterra. Likewise, the Department has not provided any factual or legal support for its theory that Belterra's operation of the Miss Belterra as a casino constitutes consideration given in exchange for the Miss Belterra. Thus, absent proof that Pinnacle's transfer of the Miss Belterra was anything other than a capital contribution, the transfer is not subject to tax. *See C.I.R. v. Fink,* 483 U.S. 89, 94, 107 S.Ct. 2729, 97 L.Ed.2d 74 (1987) (explaining that generally, "a shareholder's voluntary contribution to the capital of [a] corporation has no immediate tax consequences").

Finally, the Department contends that the transaction at issue here "is little more than an empty formality devoid of either practical or legal substance." (*See* Joint Stip. Ex. 1 at 4.) Although the Department did not develop this reasoning, the Court will briefly address it.

 "In Indiana, tax consequences generally are determined by the substance rather than the form of a transaction." *Bethlehem Steel Corp. v. Indiana Dep't of*

---

4. This interpretation of the use tax is consistent with that of several other states. *See* N.Y. TAX LAW § 1101(b)(7) (McKinney 2000) (defining "use" for purposes of the state's use tax as "the exercise of any right or power over tangible personal property or over any of the services which are subject to tax ... *by the purchaser thereof*" (emphasis added)); N.J. STAT. ANN. § 54:32B–2(h) (West 2000) (defining "use" for purposes of New Jersey's use tax as "the exercise of any right or power

over tangible personal property ... by the purchaser thereof"). *See also Terco, Inc. v. Dep't of Treasury,* 127 Mich.App. 220, 339 N.W.2d 17, 20 (1983) (noting that the legal incidence of Michigan's use tax falls upon the purchaser or consumer of the tangible personal property); MICH. COMP LAWS ANN. § 205.92(g) (West 2000) (defining "consumer" for purposes of Michigan's use tax as "the person who has purchased the tangible personal property") (amended 2007).

*State Revenue,* 597 N.E.2d 1327, 1331 (Ind. Tax Ct.1992). "To determine the substance of a transaction, the court must consider all of the surrounding facts and the legal effect of the transaction." *Id.* at 1332. A transaction structured solely for the purpose of avoiding taxes with no other legitimate business purpose will be considered a sham for taxation purposes. *See Gregory v. Helvering,* 293 U.S. 465, 469–70, 55 S.Ct. 266, 79 L.Ed. 596 (1935) (holding that the form of a corporate transaction, designed and executed for no other reason than to avoid taxes, may be disregarded when determining the tax consequences of that transaction).

In this light, the subject transaction may seem suspicious: title to the Miss Belterra was transferred to Belterra in international waters immediately after Pinnacle acquired it. Belterra, however, explains that it was necessary for Pinnacle to contract for the construction and purchase of the riverboat because Pinnacle "had the access to the capital and relationships with lenders necessary to engage in the construction of a multi-million dollar riverboat such as the Miss Belterra." (Plant Aff. ¶ 2, May 11, 2007.) The Department has offered no evidence to controvert that claim. Because Belterra's stated business purpose is facially valid, the Court concludes that Belterra's transaction was not a sham.

## CONCLUSION

For the foregoing reasons, Belterra is not subject to use tax on its acquisition of the Miss Belterra. Accordingly, Belterra's motion for summary judgment is GRANTED, and the Department's motion for summary judgment is DENIED.