ATTORNEYS FOR PETITIONER
Gregory F. Zoeller
Attorney General of Indiana

John D. Snethen
Deputy Attorney General

Matthew R. Nicholson
Deputy Attorney General

Timothy A. Schultz
Deputy Attorney General

Jennifer E. Gauger
Deputy Attorney General

Andrew W. Swain
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR RESPONDENT
Stephen H. Paul
Jon B. Laramore
Brent A. Auberry
Fenton D. Strickland
Baker & Daniels LLP
Indianapolis, Indiana



FILED

Oct 05 2010, 11:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S10-1010-TA-519

INDIANA DEPARTMENT OF
STATE REVENUE,

*Petitioner below,*

v.

BELTERRA RESORT INDIANA, LLC,

*Respondent below.*

Petition for Review from the Indiana Tax Court, No. 49T10-0605-TA-49
The Honorable Thomas G. Fisher, Judge

**October 5, 2010**

**Rucker, Justice.**

In this opinion we address the question of whether a contribution by a parent corporation to the capital of its subsidiary is automatically excluded from Indiana use tax. We conclude it is not.

**Facts and Procedural History**

Belterra Resort Indiana, LLC ("Belterra") is a Nevada corporation that owns and operates a hotel and riverboat casino in Switzerland County. Pinnacle Entertainment Inc. ("Pinnacle"), a Delaware corporation, is Belterra's parent company. Pinnacle contracted with Alabama Shipyard, Inc. of Mobile, Alabama to purchase and construct the Miss Belterra riverboat in September 1999, at the cost of $34,689,719.00. See Supp. App. at 28, 32. Alabama Shipyard then conveyed title and possession of the completed riverboat to Pinnacle on July 24, 2000. Pinnacle paid no Alabama sales tax on this transaction. The following day, Pinnacle transferred title and possession of the riverboat to Belterra while in international waters off the Gulf of Mexico. Thereafter the riverboat headed to its ultimate destination in Indiana. Pinnacle owned a 97% interest in Belterra at the time of the transfer. Pinnacle subsequently acquired the remaining 3% interest in Belterra in August of 2001.

The Indiana Department of Revenue ("Department") conducted a sales and use tax audit of Belterra in 2002 and issued a proposed use tax assessment against Belterra in the amount of $1,869,783.00 plus penalty and interest, due to its acquisition of the riverboat. Belterra protested the assessment and after a hearing on the matter the Department issued a Letter of Findings denying Belterra's protest. Belterra filed a timely appeal of the denial with the Indiana Tax Court. The parties filed cross-motions for summary judgment. After a hearing the court granted Belterra's motion for summary judgment and denied the Department's motion. Belterra Resort Ind., LLC v. Ind. Dep't of State Revenue, 900 N.E.2d 513, 517 (Ind. Tax Ct. 2009). The court reasoned that Belterra was not subject to use tax on its acquisition of the riverboat because it was a contribution to capital and not the result of a retail transaction. Id. at 516. We granted review.

2

**Standard of Review**

The Indiana Tax Court was established to develop and apply specialized expertise in the prompt, fair, and uniform resolution of state tax cases. State Bd. of Tax Comm'rs v. Indianapolis Racquet Club, Inc., 743 N.E.2d 247, 249 (Ind. 2001). This Court extends cautious deference to decisions within the special expertise of the Tax Court, and we do not reverse unless the ruling is clearly erroneous. Ind. Dep't of State Revenue v. Safayan, 654 N.E.2d 270, 272 (Ind. 1995); see also Ind. Tax Court Rule 10. We extend the same presumption of validity to Tax Court rulings on summary judgments and apply the same standard of review. Ind. Dep't of State Revenue v. Bethlehem Steel Corp., 639 N.E.2d 264, 266 (Ind. 1994). That is, when a summary judgment involves a question of law within the particular purview of the Tax Court, cautious deference is appropriate. Id.. We will set aside the Tax Court's determinations of tax law on summary judgment only if we are definitely and firmly convinced that an error was made. Id..

**Discussion**

Indiana imposes an excise tax, known as the state sales tax, on retail transactions made within the state. Ind. Code § 6-2.5-2-1(a). A retail transaction occurs when, among other things, a retail merchant in the ordinary course of its regularly conducted trade or business acquires tangible personal property for the purpose of resale and transfers that property to another person for consideration. See I.C. § 6-2.5-4-1(a), (b). Indiana also imposes a complementary tax, known as the use tax, on the use, storage, or consumption of tangible personal property in Indiana. See I.C. § 6-2.5-3-2(a). The use tax is complementary to the sales tax because it ensures non-exempt transactions that have escaped sales tax liability are nonetheless taxed. Horseshoe Hammond, LLC v. Ind. Dep't. of State Revenue, 865 N.E.2d 725, 727 (Ind. Tax Ct. 2007). In fact, Indiana's use tax is primarily designed to reach out-of-state sales of tangible personal property that is subsequently used in Indiana. Id. at 727 n.4.

At stake in this case is whether the transfer of the riverboat from the parent company to its subsidiary corporation was a "retail transaction" within the meaning of Indiana Code section 6-2.5-3-2(a). The statute provides in pertinent part "[a]n excise tax, known as the use tax, is imposed on the . . . use . . . of tangible personal property in Indiana if the property was acquired

3

in a retail transaction." Id. Belterra contends it is not subject to Indiana's use tax because the riverboat was not acquired in a retail transaction. And this is so, according to Belterra, because no consideration was given in exchange for the riverboat. See I.C. § 6-2.5-4-1(b)(2) (providing in relevant part "[a] person is engaged in selling at retail when . . . he . . . transfers that property to another person for consideration"). Rather, Belterra argues that transfer of the riverboat was made as a capital contribution with no consideration given.

In support of its contention Belterra cites Grand Victoria Casino & Resort, LP v. Ind. Department of State Revenue, 789 N.E.2d 1041 (Ind. Tax Ct. 2003). In that case Grand Victoria was formed as a result of a merger between two companies: G.V. II, Inc., and GV LLC. The facts of the merger apparently revealed that Grand Victoria received a riverboat as a capital contribution from G.V. II, Inc., and that the partners of Grand Victoria (who were previous owners of G.V. II, Inc.) received no cash or other property in connection with the capital contribution of the riverboat. On a claim that Grand Victoria was entitled to a refund of sales tax, the Department conceded and the Tax Court held that "[b]ecause the capital contribution was a transfer of property without consideration, it was not a retail sale subject to sales tax." Id. at 1045. Here, Belterra contends that it is similarly situated and thus is entitled to a determination that it is not subject to Indiana's use tax. We disagree and make several observations.

In the corporate context a capital contribution is a "transaction between a shareholder and a corporation whereby the shareholder transfers money or property to the corporation. Instead of receiving additional stock, the basis of the shareholder's existing investment in the corporation is increased in proportion to the capital contribution." Hoang v. Jamestown Homes, Inc., 768 N.E.2d 1029, 1041 (Ind. Ct. App. 2002) (Bailey, J., dissenting) (citing Black's Law Dictionary 209 (6th ed. 1990)), trans. denied; see also J. William Callison & Maureen A. Sullivan, Limited Liability Companies: A State-by-State Guide to Law and Practice § 6:1 (2010) ("Capital contribution decisions typically are made based on the LLC's capital needs . . . . In most states, members may receive membership interests in exchange for cash, property, and services contributions . . . ."). However, not all capital contributions are created equally. Indeed we see nothing inherent in such transactions that automatically exempt them from the reach of Indiana's

4

sales and use tax statutes.[1]   Thus, we do not read <u>Grand Victoria</u> as standing for the broad proposition that the fact of a capital contribution standing alone automatically means that no retail sale occurred.[2]   Instead <u>Grand Victoria</u> can best be understood as declaring that where a capital contribution is made "without consideration" then the transaction is not subject to sales tax.  Stated somewhat differently, if the capital contribution was made without consideration then there was no retail sale and thus no Indiana sales or use tax could be imposed.

The issue in this case is whether the transfer of the riverboat from Pinnacle to Belterra was done without either side receiving consideration.  In an affidavit submitted in support of its motion for summary judgment Belterra declares as much.  Specifically, the Board of Director's Resolution declared, "[ ]the Company hereby approves the transfer of ownership of the Riverboat Miss Belterra from Pinnacle Entertainment, Inc. to Belterra Resort Indiana, LLC as a capital contribution and *without consideration being paid* to Pinnacle Entertainment . . . ."  Supp. App. at 105 (emphasis added).   However, this declaration is not dispositive.   Whether consideration is given is a question of fact for the jury.  <u>NBZ, Inc. v. Pilarski</u>, 520 N.W. 2d 93,

---

[1] In contrast our research reveals that several jurisdictions have expressly provided that capital contributions are excluded from use tax.  <u>See, e.g.</u>, Md. Code Ann. Tax – Gen. § 11-209(c)(1)(iv) (LexisNexis 2010) ("Transfers – (1) The sales and use tax does not apply to a transfer of tangible personal property:  . . . (iv) to a limited liability company only as a capital contribution or in consideration for an interest in the limited liability company."); Mo. Ann. Stat. § 144.011(4) (West 2010) (sales and use tax provision declaring that "the definition of 'retail sale' or 'sale at retail' shall not be construed to include. . . . [t]he transfer of tangible personal property to a corporation by a shareholder as a contribution to the capital of the transferee corporation"); <u>see also</u> Mo. Ann. Stat. § 144.617(4) (West 2010) (denoting "[t]he transfer of tangible personal property to a corporation by a shareholder as a contribution to the capital of the transferee corporation" as one exemption to the sales and use tax); N.Y. Comp. Codes R. & Regs., tit. 20, § 526.6(d)(v) (2010) (declaring that the definition of a retail sale for sales and use tax purposes excludes "[t]he contribution of property to a partnership in consideration for a partnership interest therein" and stating that "[t]he transfers described in this paragraph between . . . corporations and stockholders, are excluded from the definition of 'retail sale' because while the form of ownership of the property is changed, there is a continuity of interest in the property transferred"); Ohio Rev. Code Ann. §5751.01(F)(2)(o) (LexisNexis 2010) (defining "gross receipts" for purposes of the Ohio commercial activity tax to exclude "[c]ontributions to capital").

[2]  <u>See, e.g.</u>, <u>Hagan v. Adams Prop. Assocs., Inc.</u>, 482 S.E.2d 805, 807 (Va. 1997) (holding transfer of legal title to property as a capital contribution to LLC was in exchange for valuable consideration and constituted a sale of the property); <u>Wolter v. Wis. Dep't of Revenue</u>, 605 N.W.2d 283, 292 (Wis. Ct. App. 1999) (holding transfer of capital accounts from a limited partnership to a LLC was valuable consideration for purposes of imposing state real estate transfer fee because the members received new rights and privileges).  <u>But see</u> <u>Mandell v. Gavin</u>, 816 A.2d 619, 625 (Conn. 2003) (holding that transfer of property to LLC involved "no consideration" for state conveyance tax purposes because it was a unilateral act and not the result of a bargained-for exchange).

97 (Wis. Ct. App. 1994). However, whether consideration exists is generally a question of law for the court. Russell v. Jim Russell Supply, Inc., 558 N.E.2d 115, 120 (Ill. App. Ct. 1990).

The tax statutes do not expressly define the term "consideration" as used in Indiana Code section 6-2.5-4-1(b)(2). However, the concept of consideration evolved from the law of contracts. Monarch Beverage Co. v. Ind. Dep't of State Revenue, 589 N.E.2d 1209, 1212 (Ind. Tax Ct. 1992). And in order to have a legally binding contract there must be generally an offer, acceptance, and consideration. Id.. "To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee." Paint Shuttle, Inc. v. Cont'l Cas. Co., 733 N.E.2d 513, 523 (Ind. Ct. App. 2000) (quoting A&S Corp. v. Midwest Commerce Banking Co., 525 N.E.2d 1290, 1292 (Ind. Ct. App. 1988)), trans. denied. A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled. DiMizio v. Romo, 756 N.E.2d 1018, 1023 (Ind. Ct. App. 2001), trans. denied. A detriment on the other hand is a legal right the promisee has forborne. Id. "The doing of an act by one at the request of another which may be a detrimental inconvenience, however slight, to the party doing it or may be a benefit, however slight, to the party at whose request it is performed, is legal consideration for a promise by such requesting party." Harrison-Floyd Farm Bureau Coop. Ass'n v. Reed, 546 N.E.2d 855, 857 (Ind. Ct. App. 1989). In the end, "consideration – no matter what its form – consists of a bargained-for exchange." Horseshoe Hammond, 865 N.E.2d at 729.

By asserting that it "paid" no consideration to Pinnacle, Belterra implies there was no cash exchanged between the parties in consequence of transferring ownership of the riverboat. See Supp. App. at 105. However, "Indiana has long held that consideration in the form of money is not essential to a binding contract." Monarch Beverage, 589 N.E.2d at 1212. And as we have discussed, the concept of consideration encompasses any benefit – however slight – accruing to the promisor or any detriment – however slight – borne by the promissee. We accept as true that Belterra paid no money to Pinnacle in acquiring the riverboat. But this does not resolve the question of whether the exchange lacked consideration. Was there any other benefit inuring to Pinnacle? Was there some detriment borne by Belterra?

We think these questions can best be answered by evaluating more closely the transaction between Belterra and Pinnacle. In Indiana, the substance, rather than the form, of transactions

6

determines their tax consequences. Mason Metals Co. v. Ind. Dep't of State Revenue, 590 N.E.2d 672, 675 (Ind. Tax Ct. 1992); Bethlehem Steel Corp. v. Ind. Dep't of State Revenue, 597 N.E.2d 1327, 1331 (Ind. Tax Ct. 1992). "A transaction structured solely for the purpose of avoiding taxes with no other legitimate business purpose will be considered a sham for taxation purposes." Belterra, 900 N.E.2d at 517 (citing Gregory v. Helvering, 293 U.S. 465, 469-70 (1935)).

In this case the tax consequences of Pinnacle's and Belterra's acquisition and transfer of Miss Belterra must be analyzed under the judicially created "step transaction" doctrine to determine their substance. The step transaction principle derives from the classic tax case cited by the Tax Court below, Gregory v. Helvering. In Gregory, the Supreme Court's analysis of the tax effect of a transaction involved "[p]utting aside . . . the question of motive in respect of taxation altogether, and fixing the character of the proceeding by what actually occurred." 293 U.S. at 469. The analysis revealed a transaction which the Court characterized as "an operation having no business or corporate purpose – a mere device which put on the form of a corporate reorganization as a disguise for concealing its real character," id., and as "an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else." Id. at 470. The Court declined to "exalt artifice above reality" and affirmed the appellate court's holding that there had been no reorganization within the meaning of the statute. Id.

As the step doctrine has evolved, the courts have formulated two separate tests: the "end results" test and the "interdependence" test. Under the end results test, "purportedly separate transactions will be amalgamated into a single transaction when it appears that they were really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result." Associated Wholesale Grocers, Inc. v. United States, 927 F.2d 1517, 1523 (10th Cir. 1991). The "interdependence" test requires an analysis of "whether on a reasonable interpretation of objective facts the steps were so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series." Id..

As to the end results test, the transactions engaged in by Pinnacle and Belterra appear to be component parts of a single transaction intended from the outset to reach the ultimate result of

avoiding paying Indiana use tax while maintaining 100% control of Miss Belterra. The component transactions here were (1) Pinnacle's purchase of the boat from the manufacturer, (2) the contribution of the boat to Belterra in international waters, and (3) Belterra's operation of the boat as a casino in Indiana. Once the boat was operating in Indiana, Pinnacle purchased the remaining 3% ownership interest in Belterra, thereby reacquiring 100% control of the boat through its 100%-owned subsidiary.

Similarly, the substance of the transactions is equally vulnerable under the interdependence test. Pinnacle's purchase of the Miss Belterra riverboat from the manufacturer, its contribution of the boat to Belterra, Belterra's operation of the boat in Indiana, and Pinnacle's acquisition of 100% control of the subsidiary owning the boat were so interdependent that it is unreasonable to conclude that any of the transactions would have been undertaken except with a view to completing the whole series of transactions.

Because we apply the step doctrine to collapse Pinnacle's and Belterra's various transactions, we thus treat the acquisition of Miss Belterra from the manufacturer as a retail transaction subject to Indiana use tax. I.C. § 6-2.5-3-2(a). As such, the purchase price paid to the manufacturer by Pinnacle constitutes the consideration required by the statute. I.C. § 6-2.5-4-1(a), (b).

## Conclusion

We reverse the decision of the Tax Court, and enter summary judgment in favor of the Department.

Shepard, C.J., and Sullivan, J., concur.
Boehm, J., dissents with separate opinion in which Dickson, J., joins.

8

**Boehm, Justice, dissenting.**

I respectfully dissent. I believe the majority adopts a definition of contribution to capital that incorrectly assumes a contribution to capital is for no consideration, and then imports contract law notions of consideration to conclude that Belterra's transfer of this riverboat to its subsidiary was not a contribution to capital.

The sales and use taxes are imposed on "retail transactions," which are defined as "selling at retail." Ind. Code § 6-2.5-4-1(a) (2010). A person is defined as "selling at retail" when:

> [I]n the ordinary course of his regularly conducted trade or business, he: (1) acquires tangible personal property for purposes of resale; and (2) transfers that property to another person for consideration.

I.C. § 6-2.5-4-1(b). Consideration is required before a transaction is a "retail transaction," but it is not the test of a retail transaction. The first and central requirement is that there be a "sale," and a contribution to capital is not a sale.

"Contribution to capital" is a well understood term in federal tax law and in accounting. It is not a "sale" at retail or otherwise, and is not in the "ordinary course" of a "regularly conducted" business. It is a transfer of legal form of ownership from direct ownership of the assets to ownership of equity interests in a corporation or limited liability company that owns the same assets. Comm'r of Internal Revenue v. Fink, 483 U.S. 89, 94–95 (1987). In this case we are dealing with a transfer by one corporation to its 97% owned subsidiary. Among other things, neither corporation has taxable income under either federal or Indiana adjusted gross income tax. This is achieved by section 351 of the Internal Revenue Code, but that does not imply that there is no consideration to the contributing shareholder. To the contrary, the transfer may be made tax free by one or more shareholders who collectively own at least 80% of the common stock of the receiving corporation. In many if not most cases the transfer is in exchange for shares of the corporation. The simplest example of such a contribution is incident to the formation of a new corporation in which the shareholders, often by contractual agreement, contribute assets to the new corporation in exchange for shares of its stock. There clearly is consideration in this transaction as that term is used in contract law, but I think no one would contend that it constitutes a retail sale subject to the sales or use tax. The only form of contribution to capital

that might (incorrectly in my view) be viewed as without consideration is a contribution of assets by a shareholder who owns essentially all of the equity shares in the corporation and does not take additional shares. Even in that case, the shareholder gets consideration as that term is used in contract law because there is added value in the pre-existing shares in the amount of the value of the contributed assets. In short "consideration" is a necessary, but not a sufficient condition to render a transaction "selling at retail."

As I see it, the only plausible claim to finding a retail transaction in this case arises from Pinnacle's having bought the boat for purposes of putting it to use in its subsidiary. If Pinnacle had not created Belterra and had simply purchased the boat and brought it to Indiana, there would be a use tax when it was placed in operation in this state. The same would be true if Belterra had purchased the boat and brought it into the state. But the Department of Revenue did not claim that it could collapse the purchase of the boat, which was a retail sale in international waters, and the contribution to capital to regard this series of events as a retail purchase by Belterra for use in Indiana. Nor did the Department advocate this application of the step-transaction doctrine in the Tax Court. Rather, its argument was presented as a "drop kick" transaction which commentators have suggested is subject to sales and use tax. James P. Kleier, Mergers and Acquisitions: Sales and Use Tax Consequences, Tax Mgmt. Multistate Tax Portfolio (BNA) No. 1530.05, at 27–28 (Feb. 25, 2000). In a "drop kick" a seller wishing to dispose of an item of personal property "drops" the asset into a newly formed corporation and sells ("kicks") the stock of the new corporation to the buyer. Although cast as a contribution to the capital of the subsidiary and a transfer of stock to the buyer, in substance the parent has sold the contributed asset to the third-party buyer. Before the Tax Court, the Department tried to fit its contention into this mold, describing its step transaction argument as a "drop kick" and identifying the transactions it sought to collapse as "(i) the contribution of the riverboat to Belterra in international waters, (ii) Belterra's operation of the riverboat as a casino, and (iii) Pinnacle's purchase of the [3% of Belterra it did not own]." It renews that contention in its petition to review. But that is not what happened here. Rather it is the reverse: the boat was purchased by the parent and then "dropped" into the subsidiary. And as the Tax Court found, the acquisition of the outstanding 3% of Belterra's stock was independent of the purchase of the boat

and required by Belterra's incorporation documents.[1]   In short, by claiming the 3% minority interest amounted to a reacquisition of the "dropped" asset, the Department hinged its contention on a matrix of transactions that did not hang together, rather than simply collapsing the purchase of the boat and the contribution to the subsidiary and arguing the transaction was a purchase by the subsidiary that incurs a use tax in Indiana.

Federal income tax law recognizes a "step transaction" doctrine that permits the courts to disregard the formal steps taken in a series of transactions if the "end result" of the transaction was from the outset the intended result of a series of transactions.  An alternative formulation is whether the transactions were so interdependent that each would have been "fruitless" without the series of steps.  Associated Wholesale Grocers v. United States, 927 F.2d 1517, 1523 (10th Cir. 1991).  Until now that doctrine had not been incorporated into Indiana tax law.  The only Indiana tax case cited by the Department to invoke this or similar reasoning was Mason Metals Company v. Indiana Department of State Revenue, 590 N.E.2d 672, 675 (Ind. Tax Ct. 1992), which in an entirely different context observed that "substance, rather than the form," dictated whether the taxpayer was engaged in providing transport services.  Although the Department cited Mason Metals, the Tax Court found that the Department "did not develop this reasoning" and concluded that there was a valid business purpose for the parent's acquisition of the boat and its subsequent contribution to the subsidiary obviously had a valid purpose to permit the licensee to operate in Indiana.  Belterra Resort Ind. v. Ind. Dep't of State Revenue, 900 N.E.2d 513, 516–17 (Ind. Tax 2009).

Importing the step transaction doctrine into Indiana tax law should be done, if at all, on a more fully developed argument in the Tax Court.  I would affirm on this record, where the argument was not "developed," and we therefore do not have the Tax Court's analysis of it.

Dickson, J., joins.

---

[1] Presumably if the 3% minority interest had not been acquired, Pinnacle would have received additional shares in Belterra to reflect the value of the boat that it contributed, unless the price to reacquire was fixed by agreement.  This seems irrelevant for our purposes.