ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Andrew W. Swain
Chief Counsel

Jessica E. Reagan
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Richard D. Birns
Birns & Goff
Philadelphia, Pennsylvania

Jeffrey S. Dible
Frost Brown Todd LLC
Indianapolis, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S10-1107-TA-417

INDIANA DEPARTMENT OF REVENUE,

*Petitioner (Respondent below),*

v.

UNITED PARCEL SERVICE, INC.

*Respondent (Petitioner below).*

On Petition for Review from the Indiana Tax Court, No. 49T10-0704-TA-24
The Honorable Thomas G. Fisher, Judge

**June 21, 2012**

**Rucker, Justice.**

In this case we examine whether income received by a corporation's affiliated foreign reinsurance companies falls within the ambit of Indiana's gross premium privilege tax statute and is on that basis exempt from Indiana adjusted gross income tax.

## Background

Typically, insurance premiums paid by a corporation are deductible from federal corporate gross income as ordinary and necessary business expenses. See Clinton N. McGrath, Jr., Using Captives to Manage Risk, 35 Am. Inst. of Certified Pub. Accountants Tax Adviser 419, 419 (July 2004). However, a company electing to insure its own risks does not receive this tax benefit. See id. For this and other reasons, "a non-insurance company [may] establish[] an insurance subsidiary (often in Bermuda or another offshore location) to insure risks of the U.S. parent and other subsidiaries." Joint Comm. on Taxation Reinsurance Analysis at 4 n.5.[1] This is commonly called a "captive" insurance arrangement. Id.

Insurance companies are subject to federal income tax at regular corporate tax rates, though companies qualifying as "insurance companies" under federal law benefit from certain federal tax code provisions applying specifically to insurance companies. Id. at 14; McGrath, supra, at 419. In Indiana and many other states, insurance companies are required to pay tax on earned premiums, in lieu of state corporate income tax. See Ind. Code §§ 6-3-2-2.8(4), 27-1-18-2(d) (2000 supp.), 27-1-18-2(h) (2001 supp.).[2] See also 14A William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 6966 at 411-12 (perm. ed. rev. vol. 2008).

Foreign insurance companies have been obligated to pay Indiana premiums tax since at least 1873, although Indiana's first uniform system of income tax was not instituted until 1933. See Linda C. Gugin & James E. St. Clair, The Governors of Indiana 295 (2006); Carlyn E.

---

[1] More precisely Joint Comm. on Taxation, Present Law and Analysis Relating to the Tax Treatment of Reinsurance Transactions Between Affiliated Entities 2, 3 (July 12, 2010) [hereinafter Joint Comm. On Taxation Reinsurance Analysis], available at http://www.jct.gov/publications.html?func=startdown &id=3690.

[2] Unless otherwise noted, the statutory language cited is that in effect during 2000 and 2001, the years at issue in this case.

Johnson, Taxing Interstate Commerce: A New Experience in Indiana, 39 Notre Dame L. 557, 557 (1963-64). In essence, the premiums tax works like an excise tax permitting a foreign insurer to do business in the state. See Fletcher, supra n.1, § 6966 at 411-12. The tax is typically calculated as a percentage of annual premiums a foreign insurer collects on its policies in the taxing state, minus various deductions. See id. at 412-15. In Indiana, an insurance company that is covered by the premiums tax statute is exempt from income tax. See I.C. §§ 6-3-2-2.8(4), 27-1-18-2(d) (2000 supp.), 27-1-18-2(h) (2001 supp.).

Reinsurance is a type of "insurance for insurers." Joint Comm. on Taxation Reinsurance Analysis, supra n.1, at 3. More specifically, "[a] reinsurance transaction is an agreement between insurance companies to pass – or cede – a risk, or a block of risks, from one company to the other company." Id. See also Black's Law Dictionary 1399 (9th ed. 2009) (defining "reinsurance" as "[i]nsurance of all or part of one insurer's risk by a second insurer, who accepts the risk in exchange for a percentage of the original premium"). Petitioner United Parcel Service describes reinsurance as essentially an indemnification agreement – a transaction in which one insurer (the reinsurer) indemnifies another insurer (the primary insurer) against all or part of the loss the primary insurer may sustain under the policies of insurance it has issued. See Appellant's App. at 50 (citing Reinsurance Ass'n. of Am., Fundamentals of Property and Casualty Reinsurance (2007)).

**Facts and Procedural History**

United Parcel Service (UPS) and its affiliates comprise the world's largest package delivery company. Appellant's App. at 38. UPS and its affiliates have traditionally filed a "consolidated" Indiana corporate income tax return whereby UPS filed one tax return on behalf of itself and its affiliates. See I.C. § 6-3-4-14; Pet'r's Designation of Evidence in Support of Mot. for Summ. J. at 1 [hereinafter D.E.]. UPS's numerous affiliates include reinsurance companies UPINSCO (formed under the laws of the U.S. Virgin Islands) and UPS Re (formed under the laws of Bermuda) (the "Affiliates"). For its operations nationwide, including in Indiana, UPS decided to obtain worker's compensation insurance to cover its employees, as well as liability insurance for damage to its packages. During the years at issue, UPS contracted with

3

Liberty Mutual Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., and Illinois National Insurance Company (the "Primary Insurers") to provide this insurance. The Affiliates then reinsured, or indemnified, the Primary Insurers for these risks. As UPS declared at oral argument, it ultimately desired to bear its own risks for worker's compensation and package damage losses. Oral Arg. Video Tr. at 26:02-26:40. And UPS accomplished this end through the reinsurance arrangement with its Affiliates. Oral Arg. Video Tr. at 26:02-26:40. The net effect is that UPS's own subsidiaries ultimately insured UPS's risks, but without the federal tax disadvantages of self-insurance.

This case stems from an Indiana Department of Revenue ("Department") audit of UPS's Indiana corporate income tax returns for the years 2000 and 2001. In 2000, UPS amended its originally-filed year 2000 tax return to exclude from federal taxable income, and thus from Indiana adjusted gross income, the income of the Affiliates.[3] These exclusions contributed to a $359,466.00 reduction in UPS's total Indiana adjusted gross income tax for the year 2000, for which UPS sought a refund. UPS's 2001 tax return likewise excluded the income of the Affiliates, resulting in a lower total tax liability imposed on UPS than if the income of the Affiliates had been included. In its audit, the Department disallowed the exclusion. The Department also denied UPS's request for a refund for tax year 2000 and issued a proposed assessment for underpaid taxes in 2001, resulting in a net proposed assessment of $390,715.94. See D.E. at 279.

UPS protested the assessment and after a hearing the Department issued a Letter of Findings denying UPS's protest. UPS filed a timely appeal of the denial with the Indiana Tax Court. The parties filed cross-motions for summary judgment. After a hearing and in an unpublished order the court granted UPS's motion for summary judgment and denied the Department's motion. See United Parcel Serv., Inc. v. Ind. Dep't of State Revenue, No. 49T10-0704-TA-24 (Ind. Tax Ct. December 29, 2010). The court reasoned that because UPS was

---

[3] Though the record is not entirely clear, it appears that the amended 2000 return also included other adjustments to UPS's income. The only adjustments at issue here concern the exclusion of income from UPINSCO and UPS Re.

"subject to" the premium tax, it was exempt from the adjusted gross income tax. We granted review. Additional facts are set forth below where necessary.

## Standard of Review

The Indiana Tax Court was established to develop and apply specialized expertise in the prompt, fair, and uniform resolution of state tax cases. Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC, 935 N.E.2d 174, 176 (Ind. 2010). This Court extends cautious deference to decisions within the special expertise of the Tax Court, and we do not reverse unless the ruling is clearly erroneous. Id. We extend the same presumption of validity to Tax Court rulings on summary judgment and apply the same standard of review. Id. at 176-77; Ind. Dep't of State Revenue v. Bethlehem Steel Corp., 639 N.E.2d 264, 266 (Ind. 1994). That is, "[w]hen a summary judgment involves a question of law within the particular purview of the Tax Court, cautious deference is appropriate." Bethlehem Steel, 639 N.E.2d at 266 (quoting Ind. Dep't. of State Revenue v. Caylor-Nickel Clinic, P.C., 587 N.E.2d 1311, 1313 (Ind. 1992)). We will set aside the Tax Court's determinations of tax law on summary judgment only if we are definitely and firmly convinced that an error was made. Id.

## Discussion

During the tax years at issue, several state taxes applied to corporate income, including an adjusted gross income tax imposed "on that part of the adjusted gross income derived from sources within Indiana of every corporation." I.C. § 6-3-2-1(b). The adjusted gross income tax is an apportioned tax designed to reach income from interstate transactions. Bethlehem Steel Corp., 639 N.E.2d at 266 n.4. However, Indiana Code section 6-3-2-2.8(4) provides in relevant part, "there shall be no tax on the adjusted gross income of . . . [i]nsurance companies *subject to* tax under IC 27-1-18-2." (emphasis added).

In turn, Indiana Code section 27-1-18-2 provides for a gross premium privilege tax, or "premiums tax" for short. In brief, the statute requires all foreign insurance companies "doing business within this state" to report annually to the Department of Insurance "the gross amount

5

of all premiums received by it on policies of insurance covering risks within this state." I.C. § 27-1-18-2(a). Deducted from this amount are "considerations received for reinsurance of risks within this state." I.C. § 27-1-18-2(a)(1). Under this statute, the insurance company is taxed at a certain rate on "the excess, if any, of the gross premiums over the allowable deductions." I.C. § 27-1-18-2(c) (2001 supp.).[4]

Both parties to this litigation have focused on the meaning of the phrase "subject to" under the provision of Indiana Code section 6-3-2-2.8(4). The Department insists that UPS is not subject to the premiums tax because it did not comply with the various provisions of the statute, see supra n. 4, and thus does not qualify for an exemption. Just as important, according to the Department, neither of the Affiliates has ever paid the premiums tax as required by statute. UPS counters it never paid the premiums tax because all the premiums it received were for reinsurance and thus were deductible from gross premiums under section 27-1-18-2(a)(1). UPS asserts, "[i]t is undisputed that the two insurance affiliates of UPS received premiums on policies of insurance covering risks within Indiana." Br. in Resp. to Pet'n for Review at 2. Thus, UPS posits that the reinsurance Affiliates were "subject to" the premiums tax such that their income should have been excluded from the corporate adjusted gross income tax. Br. in Resp. to Pet'n for Review at 2.

---

[4] More particularly relevant portions of the statute provide:

> (a) Every insurance company not organized under the laws of this state, . . . and doing business within this state shall, on or before March 1 of each year, report to the department [of insurance], under the oath of the president and secretary, the gross amount of all premiums received by it on policies of insurance covering risks within this state, or in the case of marine or transportation risks, on policies made, written, or renewed within this state during the twelve (12) month period ending on December 31 of the preceding calendar year. From the amount of gross premiums described in this subsection shall be deducted: (1) considerations received for reinsurance of risks within this state from companies authorized to transact an insurance business in this state . . . .

> (c) (1) For the privilege of doing business in this state, every insurance company required to file the report provided in this section shall pay into the treasury of this state an amount equal to two percent (2%) of the excess, if any, of the gross premiums over the allowable deductions.

I.C. § 27-1-18-2 (2000 supp.).

The Tax Court concluded, "[T]o be 'subject to' the premiums tax under Indiana Code § 6-3-2-2.8(4) does not mean that one must 'pay' the premiums tax; rather, it simply means that one is 'placed under the authority, dominion, control, or influence' of the premiums tax under § 27-1-18-2." United Parcel Serv., No. 49T10-0704-TA-24, slip op. at 6 (footnote omitted) (quoting Webster's Third New Int'l Dictionary 2275 (2002 ed.)). According to the Tax Court "Indiana Code § 6-3-2-2.8(4), in conjunction with Indiana Code § 27-1-18-2, clearly demonstrate[s] that UPINSCO and UPS Re were 'subject to' the premiums tax under Indiana Code § 27-1-18-2." Id. at 7.

Assuming without deciding that the Tax Court's interpretation of the phrase "subject to" is correct, that is, "one is 'placed under the authority, dominion, control, or influence' of the premiums tax under § 27-1-18-2" we are of the view this does not resolve the question of whether the Affiliates are entitled to an exemption from the payment of adjusted gross income tax.

As with other statutes, we interpret tax statutes to give effect to their language and the intent of the legislature. See Ind. Wholesale Wine & Liquor Co. v. State ex rel. Ind. Alcoholic Beverage Comm'n, 695 N.E.2d 99, 103, 104-05 (Ind. 1998); DeKalb Cnty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010). Further, "[i]t has long been held that exemption statutes are to be strictly construed against the taxpayer and, therefore, the burden is on the taxpayer to establish its right to an exemption." Tipton Cnty. Health Care Found., Inc. v. Tipton Cnty. Assessor, 961 N.E.2d 1048, 1051 (Ind. Tax Ct. 2012).

The plain language of Indiana Code section 27-1-18-2 requires that all insurance companies – like UPINSCO and UPS Re – not "organized under the laws of this state" must, at the very least, show they are "doing business within this state" before the companies are entitled to an exemption from adjusted gross income. The very first sentence of the statute reads, "Every insurance company not organized under the laws of this state, . . . *and doing business within* this state shall . . . ." I.C. § 27-1-18-2(a) (emphasis added).

7

Title 27 of the Indiana Code governs the business of insurance within the state of Indiana. Article 1 of this title provides for the creation of a state department of insurance (the "Insurance Department") which will "have charge of the organization, supervision, regulation, examination, rehabilitation, liquidation, and/or conservation of all insurance companies to which this title is applicable, shall have charge of the enforcement, administration, and execution of the provisions of this title . . . ." I.C. § 27-1-1-1). The code further provides that the commissioner of the Insurance Department "may issue a certificate of authority to any company when it shall have complied with the requirements of the laws of this state so as to entitle it to do business herein," and "[n]o company shall transact any business of insurance or hold itself out as a company in the business of insurance in Indiana until it shall have received a certificate of authority as prescribed in this section." I.C. § 27-1-3-20(a), (c). Foreign insurance companies are specifically required to obtain this certificate of authority, I.C. § 27-1-17-1, and in order to do so they must comply with comprehensive Insurance Department requirements including submitting an application for admission and providing extensive documentation of their corporate organization and financial condition. See I.C. § 27-1-17-4.

Focusing on the fact that UPINSCO and UPS Re are foreign reinsurance companies that collected premiums for reinsurance of risks within the State of Indiana, UPS insists the adjusted gross income of the Affiliates "was and is exempt" from corporate adjusted gross income tax. Pet'r's Mot. for Summ. J. at 2. However, the mere fact that the Affiliates "collected premiums for reinsurance of risks" in Indiana does not ipso facto establish they were doing business in Indiana. We find support for this view in State ex rel. Crittenberger v. Continental Insurance Co. of New York, 116 N.E. 929 (Ind. Ct. App. 1917).

In that case the state auditor, Crittenberger, sought to recover premiums tax on reinsurance premiums received by Continental, an insurance company organized under the laws of New York. Continental maintained a primary fire insurance business in Indiana, and also received reinsurance premiums from other foreign insurers for risks located in Indiana. One question in the case was whether under the terms of the premiums tax statute Continental had the duty to pay Indiana premiums tax on the reinsurance premiums it received.[5] The Court of

_____

[5] In relevant part the statute at issue in Crittenberger was much the same as it is today. It read:

Appeals construed the statute to mean "the tax shall be imposed only on business done within the territorial boundaries of the state of Indiana" because the premiums tax statute applied to "every insurance company not organized under the laws of this state, and doing business therein." Crittenberger, 116 N.E. at 934-35. The Court of Appeals determined that reinsurance transactions occurring outside of Indiana, even if they involved primary risks located in Indiana, did not amount to business done in the state. The court reasoned:

> Where a foreign company takes over from another foreign company, for the purpose of reinsurance, risks on property in this state, the transaction is, of course, between the companies, and the insurer would not be subject to the tax on the reinsurance premium received if the business was not done in this state. And this would be so whether the companies were licensed to do business in this state or not.

Id. at 935.[6] The court next analyzed the reinsurance transaction at issue and found it took place entirely within the state of Illinois. Therefore, the court held that Continental was "not required

---

> Every insurance company not organized under the laws of this state, and doing business therein, shall, in the months of January and July of each year, report to the auditor of state under oath of the president and secretary the gross amount of all receipts received in the state of Indiana on account of insurance premiums for the six months last preceding, ending on the last day of December and June of each year next preceding, and shall at the time of making such report pay into the treasury of the state the sum of three dollars on every one hundred dollars of such receipts, less losses actually paid within the state, and any such insurance company failing or refusing for more than thirty days to render an accurate [account] of its premium receipts as above provided and pay the required tax thereon shall forfeit one hundred dollars for each additional day such report and payment shall be delayed, to be recovered in an action in the name of the state of Indiana on the relation of the auditor of state in any court of competent jurisdiction, and it shall be the duty of the auditor of state to revoke all authority of any such defaulting company to do business within this state.

Burns Ann. Ind. Statutes § 10216 (1914).

[6] Accord Ind. Att'y Gen., Insurance Department: No authority for premium tax on reinsurance premiums. Reinsurance premiums no right to tax, 181, 184 (Apr. 12, 1938) ("[I]t is my opinion that the State of Indiana cannot collect a premium tax on reinsurance premiums, whether the company is authorized to do business in Indiana or not, so long as such companies, parties to the reinsurance agreement, are foreign insurance companies and the reinsurance contract is consummated beyond the borders of the state.") (citing Conn. Gen. Life Ins. Co. v. Johnson, 303 U.S. 77 (1938)). See also Ind. Att'y Gen., Official Opinion No. 81, 313, 319 (Aug. 13, 1946) (concluding that because Indiana cannot tax reinsurance

to pay taxes to the state of Indiana on said reinsurance premiums." Id.[7] Although interpreting a much earlier version of the premium tax statute, the Court of Appeals' assessment applies with equal force to the statute before us today.

The question here is whether the summary judgment materials presented to the Tax Court support the conclusion that during the years in question UPINSCO and UPS Re were "doing business within this state." The record shows and the parties do not dispute the reinsurance transactions at issue took place between foreign companies – that is, neither the Primary Insurers nor UPINSCO and UPS Re are organized under the laws of Indiana. UPS designated a substantial amount of evidentiary material concerning its business operations including agreements governing its reinsurance transactions. The UPINSCO agreements specify all payments under the agreements shall be made to the Primary Insurer whose address is listed as Boston, Massachusetts. See, e.g., D.E. at 63, 60. UPINSCO's address is listed as St. Croix, U.S. Virgin Islands. See, e.g., D.E. at 46, 72. Payments under the UPINSCO agreements are to be made via drafts on a letter of credit issued by an Italian bank, as presented to the bank's New York office. D.E. at 94. The UPS Re agreement provides that any "notice, report, order, request or other communication" shall be made to UPS Re in Hamilton, Bermuda and Atlanta, Georgia[8] and to the Primary Insurer in New York, New York. D.E. at 112. The UPS Re agreement provides that UPS Re's liability "shall attach simultaneously with that of the [Primary Insurer] . . . [but] nothing herein shall in any manner create any obligation to or establish any rights against

---

premiums and reinsurance losses are not paid within the state, reinsurance losses are not deductible by an insurer in computing premium tax due).

[7] Indiana is not alone in concluding its premiums tax statute does not apply to reinsurance agreements. See Fletcher, supra n.1, § 6966 at 414-15. See also, e.g., In re Cont'l Cas. Co., 179 N.W. 185, 189 (Iowa 1920) (concluding that reinsurance of Iowa risks between New York insurance companies "was business done by these companies in the state of their domicile" and seeing "no fair reason for saying that such business should be deemed as constructively done in Iowa, or should be deemed as coming within the letter or spirit of our [premiums tax] statute"); People ex rel. Sea Ins. Co. v. Graves, 8 N.E.2d 872, 874 (N.Y. 1937) (holding a reinsurance contract entered into in New Jersey but covering primary risks in New York constituted business done in New Jersey and was therefore not subject to New York premiums tax); Se. Fire Ins. Co. v. S.C. Tax Comm'n, 171 S.E.2d 355, 356 (S.C. 1969) (recognizing "[t]here is certainly a difference between insurance and reinsurance" and determining a statute taxing "total premiums . . . from insurance contracts" did not apply to reinsurance contracts).

[8] The contract specifies the Primary Insurer shall copy all Bermuda notices to a UPS Re fax number with a 404 area code. 404 is the area code for Atlanta, Georgia.

[UPS Re] by any third parties or any persons not parties to this Agreement." D.E. at 107. The UPINSCO agreements contain a choice of venue provision for Massachusetts state courts, an arbitration clause in which arbitration is to take place in Boston, Massachusetts, mandates that the agreements "shall be governed by the law of the Commonwealth of Massachusetts," requires service to UPINSCO in St. Croix and Atlanta, Georgia, and requires service to the Primary Insurer in Massachusetts. D.E. at 66, 67, 71, 77, 78. The UPS Re agreement provides for choice of venue and law in New York and mandates service to be given in the same manner as other notices under the agreement. D.E. at 111.

In sum, even assuming UPINSCO and UPS Re reinsured Indiana risks, there is no evidence in the record before us that the reinsurance transactions took place in the State of Indiana. Stated somewhat differently, none of the summary judgment materials presented to the Tax Court and in consequence nothing before this Court establishes that during the years in question UPINSCO and UPS Re were doing business within the State of Indiana. Because this is a necessary condition in order to be "subject to" the premium tax, UPS failed in its burden of establishing that it is entitled to summary judgment as a matter of law. Because we are definitely and firmly convinced the Tax Court's determination to the contrary is in error, we reverse the grant of summary judgment in favor of UPS and remand this cause for further proceedings.

### Conclusion

The judgment of the Tax Court is reversed and this cause remanded.

Dickson, C.J., and Sullivan, David and Massa, JJ., concur.