MASON METALS COMPANY,
INC., Petitioner,

v.

INDIANA DEPARTMENT OF STATE
REVENUE, Respondent.

No. 49T05–9008–TA–00041.

Tax Court of Indiana.

April 13, 1992.

Joseph P. Allegretti, Sherman and Allegretti, Hammond, for petitioner.

Linley E. Pearson, Atty. Gen., of Indiana and Joel Schiff, Deputy Atty. Gen., Indianapolis, for respondent.

Barton T. Sprunger and Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, for Land Air Transp. Co., Inc. as amicus curiae in support of petitioner.

FISHER, Judge.

The Petitioner, Mason Metals Company, Inc. (Mason), appeals the final determination of the Respondent, the Indiana Department of State Revenue (Department), denying Mason's claims for refund of Indiana State Gross Retail and Use Tax (sales and use tax), IND. CODE 6–2.5–1–1 *et seq.*, paid for the years 1985 and 1986.

## FACTS

Mason is an Indiana corporation engaged in the recycling and manufacturing of tin products. Mason uses various motor carriers to transport its tin products to destinations throughout the continental United States. During the years at issue, Mason and American Energy Products, Inc. (American) entered into agreements by which American provided a tractor [1] and a driver to haul Mason's semitrailers. The tractor was owned and licensed by American, and American paid sales tax on the tractor when it was purchased. The tractor's drivers were employees of American. American paid the drivers and directed their actions. American also serviced the tractor, purchased its fuel, and stored the tractor when it was not being used to haul Mason's products. Although Mason paid for insurance on the tractor, American reimbursed Mason for insurance expense. Furthermore, American's use of the tractor was not exclusively for purposes of hauling Mason's products.

Mason (lessee) and American (lessor) executed two lease agreements concerning the tractor. The first lease agreement, running from May 28, 1985, to November 30, 1986, provides in relevant part:

> For the purpose that said motor vehicle(s) leased hereby shall be under exclusive and complete possession, use and control of LESSEE during the periods the equipment is operated by or for the LESSEE. LESSEE shall provide and maintain in force for the motor vehicle lease hereunder the [ ] insurance coverage.... All rates due the LESSOR are agreed upon at: *1.25 per running mile and/or 35.00 per* local working hour....

*Petitioner's Exhibit A.* Mason's second lease agreement, dated December 1, 1986, was nearly identical to its first lease agreement. The second lease agreement differed only because it covered an indefinite term and contained an express provision for reimbursement of Mason's insurance costs. *Petitioner's Exhibit B.*

During the years at issue, American did not hold either a common carrier certificate

---

**1.** The term "tractor" refers to a short chassis truck used to pull a semitrailer.

of public convenience and necessity or a contract carrier permit as required under IND. CODE 8–2–7 *et seq.* (currently IND. CODE 8–2.1–18 *et seq.*) to transport Mason's products for compensation. American, however, used the lease agreements for the tractor as operating authority to haul Mason's products, thereby avoiding compliance with laws requiring a certificate or permit. *See* Note 4, *infra.*

In 1987, the Department audited Mason for the tax years 1984, 1985, and 1986. During the course of the audit, the Department discovered Mason's lease agreements and, based on their terms, proposed the assessment of sales and use tax on Mason's transactions with American for the years 1985 and 1986. Mason protested the proposed assessment, and the Department held a hearing on July 18, 1988. On January 17, 1989, the Department issued its letter of findings, concluding that Mason owed sales and use tax on its lease agreements, and the Department issued notices of assessment on March 17, 1989. Mason paid the taxes, penalties, and interest assessed and filed claims for refund, which the Department denied, and Mason now appeals. Additional facts are introduced below as necessary.

### ISSUES

I. Whether Mason's transactions with American involve the leasing of property that is subject to sales and use tax?
II. Whether Mason should be estopped from denying that its transactions were carried out under the terms of its lease agreements? [2]

### DISCUSSION AND DECISION

#### I.

In appeals of claims for refund from the Department, "[t]he tax court shall hear the appeal *de novo*...." IND.CODE 6–8.1–9–1(d) (emphasis added). "An excise tax, known as the state gross retail tax, is imposed on *retail transactions* made in Indiana." IND. CODE 6–2.5–2–1(a) (emphasis added). Likewise, "[a]n excise tax, known as the use tax, is imposed on the storage, use, or consumption of tangible personal property in Indiana, if the property was acquired in a *retail transaction*...." IND. CODE 6–2.5–3–2(a) (as amended 1985) (emphasis added). "A person ... is a retail merchant making a *retail transaction* when he *rents or leases tangible personal property* to another person." IND. CODE 6–2.5–4–10(a) (emphasis added).

■ The central issue in the case at bar is whether Mason leased property in a retail transaction that is subject to sales and use tax. Although sales and use tax is generally applicable under IC 6–2.5–4–10 to leasing arrangements, whether a lease arrangement in fact exists depends on the lessee's possession and control over the property involved. *Indiana Dep't of State Revenue v. Indianapolis Transit Sys., Inc.* (1976), 171 Ind.App. 299, 307, 356 N.E.2d 1204, 1209 (quoting *Thomas v. Foglio* (1961), 225 Or. 540, 358 P.2d 1066). "When a matter is expressly covered by a written instrument, the unambiguous provisions of that instrument control and the intent of the parties will be determined from within the 'four corners' of the instrument." *Orkin Exterminating Co. v. Walters* (1984), Ind.App., 466 N.E.2d 55, 60 (citing *Orme v. Estate of Kruwell* (1983), Ind.App., 453 N.E.2d 355, *trans. denied; Hauck v. Second Nat'l Bank of Richmond* (1972), 153 Ind.App. 245, 286 N.E.2d 852), *trans. denied.* The Department contends that because the lease agreements unambiguously state that the tractor "shall be under [the] exclusive and complete possession, use and control" of the lessee, Mason is subject to sales and use tax on its transactions with American.

■ On the contrary, Mason contends its lease agreements do not accurately reflect the substance of its transactions with

**2.** In its Post Trial Brief, the Department also argues that the court improperly overruled its objection to the introduction of certain evidence contrary to the "parol evidence rule" and the

"best evidence rule." The court has ruled on these objections and declines the Department's invitation to revisit these issues.

American. The substance, rather than the form, of transactions determines their tax consequences. *See Meridian Mortgage Co. v. State* (1979), 182 Ind.App. 328, 395 N.E.2d 433, 440 (citing *Thompson v. Arnold* (1958), 238 Ind. 177, 147 N.E.2d 903; *Madding v. Indiana Dep't of State Revenue* (1971), 149 Ind.App. 74, 270 N.E.2d 771). Mason asserts the substance of its transactions with American involved the provision of transportation services and that American actually maintained possession and control over the tractor.

▮ Generally, sales and use tax does not apply to the provision of transportation services. *See Indianapolis Transit,* 356 N.E.2d at 1210. Transportation services, however, often are intertwined with the use of equipment. In such cases, one may have difficulty in determining whether transactions also involve the leasing of property, which is subject to sales and use tax.

*Indianapolis Transit* addressed the question of whether chartering buses constituted lease transactions subject to sales and use tax. The court stated that whether a lessor/lessee relationship exists, subjecting a lessee to sales and use tax, is a factual question dependent on the lessee's possession and control over the leased property. *Id.* at 1209 (quoting *Thomas v. Foglio* (1961), 225 Or. 540, 358 P.2d 1066). The court analyzed whether the lessee had possession and control by considering six factors:

(1) The employment of the driver.

(2) The right to direct movement of the bus.

(3) Obligation to pay costs and repairs.

(4) Obligation to pay fuel costs.

(5) The responsibility of garaging the vehicle.

(6) Payment of insurance and license fees.

*Id.* at 1209–10.

▮ In the case at bar, American maintained possession and control of the tractor, employed the driver, directed the movement of the tractor,[3] paid for repairs on the tractor, paid the fuel costs, and was responsible for garaging the vehicle. Although Mason paid for insurance on the tractor, American reimbursed Mason for such expense. In addition, the tractor was licensed in American's name. Accordingly, under the *Indianapolis Transit* test, Mason did not have possession and control of the tractor.

The Department's regulation 45 I.A.C. 2.2–4–27(d)(3) addresses the applicability of sales and use tax to transactions in which leases of property are coupled with the services of an operator. Under this regulation, lease transactions are not subject to sales and use tax unless the lessee has control over the leased property:

(3) Renting or leasing property with an operator:

(A) The renting or leasing of tangible personal property, together with the services of an operator shall be subject to the [sales and use] tax when control of the property is exercised by the lessee. *Control is exercised when the lessee has exclusive use of the property, and the lessee has the right to direct the manner of the use of the property.* If these conditions are present, control is deemed to be exercised even though it is not actually exercised.

(B) The rental of tangible personal property together with an operator as

---

**3.** Arguably, Mason directed the movement of the tractor because Mason dictated the destination of its products. In the *Indianapolis Transit* case, the court recognized that under charter services passengers contracted with Indianapolis Transit System, Inc. (Indianapolis Transit), to take them to specific destinations. *Indianapolis Transit,* 356 N.E.2d at 1210. The court did not, however, find that Indianapolis Transit relinquished the right to direct the movement of its vehicles because the passengers had specific destinations. By analogy, the fact that Mason dictates the destination of its metal products does not imply that American relinquishes the right to direct the movement of its tractor. At trial Rod Memering, a plant manager of Mason, testified about the direction of movement:

Q. Did [Mason] have any say or control in the route taken by the trucks in getting to the destination?

A. No.

*Record* at 36.

part of a contract to perform a specific job in a manner to be determined by the owner of the property or the operator *shall be considered the performance of a service rather than a rental or lease provided the lessee cannot exercise control over such property and operator.*

. . . .

45 I.A.C. 2.2–4–27(d)(3) (emphasis added).

Although the language of Mason's lease agreements purports to give Mason the right to direct the manner of the tractor's use, the evidence shows Mason actually had no such right. The tractor's drivers were employees of American, and American directed the drivers' actions. Mason also had no control over the routes taken by the drivers in getting to their destinations. Moreover, the tractor was not used exclusively to haul Mason's products. Accordingly, Mason did not have the possession and control of the tractor, under either the *Indianapolis Transit* test or under 45 I.A.C. 2.2–4–27(d)(3), necessary to characterize its transactions as a leasing of property subject to sales and use tax.

### II.

■ The Department next contends that Mason should be estopped from asserting that its transactions differed from the terms of the lease agreements. The Department contends American's use of the lease agreements as operating authority constitutes a representation by Mason that its transactions were carried out according

to the terms of the lease agreements. Generally, to provide transportation for compensation, a common carrier must obtain a certificate of public convenience and necessity, and a contract carrier must obtain a permit. IC 8–2–7 *et seq.* (currently IC 8–2.1–18 *et seq.*). During the years at issue, American held neither a certificate nor a permit as required. American, instead, used the lease agreements as operating authority to transport Mason's products.[4]

■ In its Post Trial Brief, the Department claims that the agency regulating motor carriers during the years at issue[5] relied on the terms of the lease agreements in allowing American to operate. *Respondent's Post Trial Brief* at 7, 9. The Department argues, therefore, it would be unfair for Mason to disavow the terms of the lease agreements for tax purposes. Generally, equitable estoppel precludes a person from maintaining a position inconsistent with another position asserted at a previous time. *See generally* 31 C.J.S. *Estoppel* § 108 (1964); 12 I.L.E. *Estoppel* § 42 (1959).

'A party cannot occupy inconsistent positions; and, where one has an election between several inconsistent courses of action, he will be confined to that which he first adopts. Any decisive act of the party, done with knowledge of his rights and of the facts, determines his election and works an estoppel.'

*Bowes v. Lambert* (1943), 114 Ind.App. 364, 51 N.E.2d 83, *reh'g denied*, 114 Ind.App.

---

4. The Department asserts that a document containing the language of Mason's lease agreements could be used as operating authority, in lieu of a certificate or permit. Pursuant to 170 I.A.C. 2–1–13(d) (currently 45 I.A.C. 16–1–13(d)), "authorized carriers may perform authorized transportation" under lease agreements, similar to Mason's, which give the lessee exclusive possession and control over the leased property. Subsection (b)(1) of this regulation, however, states: "An authorized carrier shall mean a person or persons authorized to engage in the transportation of property as a common or contract carrier...." Common carriers and contract carriers are, however, required to obtain a certificate or a permit under IC 8–2–7 *et seq.* (currently IC 8–2.1–18 *et seq.*). Accordingly, to be an *authorized carrier* capable of performing authorized transportation under the lease agree-

ments at issue, American still should have been required to obtain either a certificate or permit. *See also* 170 I.A.C. 2–1–13(f)(1) (currently 45 I.A.C. 16–1–13(f)(1)) (if specified in their operating authorities, authorized carriers may rent equipment with drivers to private carriers or shippers).

5. The Public Service Commission was responsible for the relevant motor carrier regulation during the years at issue. The name of the Public Service Commission was later changed to the Utility Regulatory Commission. P.L. 113–1987, § 1, effective July 1, 1987 (amending IND. CODE (1983) 8–1–1–2). The Department assumed authority over motor carrier regulation from the Utility Regulatory Commission. P.L. 72–1988, § 12, effective July 1, 1988.

364, 371, 51 N.E.2d 897, 898 (quoting *Hight v. Carr* (1916), 185 Ind. 39, 45, 112 N.E. 881, 883) *trans. denied.*

▮ The remedy of estoppel, however, is limited to redressing the injuries arising from the acts creating the estoppel:

> The doctrine of equitable estoppel ... is based on the ground of promoting the equity and justice of the individual case, and it is not to be carried further than the end for which the estoppel is created. 2 Herman, Estoppel and Res Judicata, § 782.... 'The estoppel is called into life for the purpose of preventing wrong and redressing injury.' Section 788.

*Cleveland C.C. & St. L. Ry. Co. v. Moore* (1907), 170 Ind. 328, 355, 82 N.E. 52, 61.

> [Estoppel] springs from equitable principles, and is designed to aid the law in the administration of justice where without its aid injustice might result. *State v. Mutual Life Ins. Co. of New York* (1910), 175 Ind. 59, 93 N.E. 213, 42 L.R.A., N.S., 256. It is purely a defensive weapon, its purpose being to preserve rights previously acquired, and not to create new ones. '[Its use] is as a shield, and not as a sword.' It should never be invoked as an instrument of gain but should be confined to saving harmless or making whole the party in whose favor it arises. *Sherrick v. State* (1906), 167 Ind. 345, 79 N.E. 193, 198.

*Bowes,* at 371, 51 N.E.2d at 85. "Although courts of equity should not condone illegal behavior, neither should they be the moral judges of matters not before them." *Keller v. Indiana Dep't of State Revenue* (1988), Ind.Tax, 530 N.E.2d 787, 789, *appeal dismissed,* (1990), Ind., 549 N.E.2d 372.

▮ Assuming the use of the lease agreements as operating authority establishes estoppel, such use is not relevant to the assessment of sales and use tax. The use of the lease agreements as operating authority may have resulted in the circumvention of motor carrier laws, for which the legislature has provided statutory remedies.[6] The use of the lease agreements as operating authority did not, however, result in injury to the Department by preventing the collection of sales and use tax on transactions substantively subject to sales and use tax. The court's application of estoppel would permit the Department to collect sales and use tax on transactions that are not subject to sales and use tax. Because the use of the lease agreements as operating authority did not harm the Department with respect to the collection of sales and use tax, the court finds Mason should not be estopped from asserting that its transactions differed from the terms of its lease agreements.

▮ The Department further contends Mason should be estopped from denying that the terms of its lease agreements controlled its transactions because Mason represented that the terms of the lease agreements required American to pay any applicable taxes on the tractor. The Department asserts Mason made such representations in discussions with the Department's auditor and hearing officer and in Mason's claims for refund.

The Department's letter of findings states: "The taxpayer submits that it understood [American] was responsible for all taxes, if any were applicable to the transaction." *Respondent's Exhibit 2.* Likewise, in its claims for refund Mason states: "[O]ur agreement with the lessor stipulated that they would pay all applicable sales taxes...." *Petitioner's Exhibits H and I.*

In fact, the lease agreements contain no provision for the allocation of applicable taxes on the tractor. Therefore, the inference is that Mason's representations, regarding the payment of taxes on the tractor, do not relate to the terms of its lease agreements, but rather, to its substantive agreement. Moreover, as reasoned above, the Department has not suffered a loss of sales and use tax that would require the remedy of estoppel.

---

**6.** *See* IND.CODE 8-2-7-52(b) (repealed July 1, 1989) (violations of the rules and regulations governing the lease and interchange of vehicles are Class C infractions); *see also* IND.CODE 8-2.1-18-48 (violations of chapter 8-2.1-18 are Class B infractions).

In conclusion, although a transaction carried out under the terms of Mason's written agreements would be subject to sales and use tax, the lease of property with the services of an operator does not give rise to sales and use tax liability, unless the lessee maintains possession and control over the leased property. Notwithstanding the form of the lease agreement, American, the lessor, maintained possession and control over the leased equipment. Therefore, the court finds the Department improperly assessed sales and use tax against Mason on its transactions with American.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be entered in favor of the Petitioner, Mason Metals Company, Inc. The Indiana Department of State Revenue is ORDERED AND DIRECTED to refund to Mason Metals Company, Inc., the portion of sales and use tax, interest, and penalties applicable to the transactions at issue, which Mason paid, plus interest thereon. *See* IND. CODE 6–8.1–9–2(c); *General Motors Corp. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 578 N.E.2d 399.