**AWHR AMERICA'S WATER HEATER RENTALS, LLC, Petitioner,**

**v.**

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0710–TA–50.

Tax Court of Indiana.

July 15, 2010.

Publication Ordered Dec. 2, 2010.

Mark J. Richards, Ice Miller LLP, Indianapolis, IN, Attorney for Petitioner.

Gregory F. Zoeller, Attorney General of Indiana, Andrew W. Swain, Chief Counsel, Tax Section, Jessica E. Reagan, Nancy M. Hauptman, Deputy Attorneys General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

AWHR America's Water Heater Rentals, LLC (AWHR) challenges the Department of State Revenue's (Department) assessment of Indiana gross retail tax (sales tax) for the years ending December 31, 2003, December 31, 2004, and December 31, 2005 (the years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment.

## FACTS AND PROCEDURAL HISTORY

The following facts are undisputed. AWHR advertises that it is in the business of providing "worry-free and economical hot water." (*See* Pet'r Des'g Evid. Ex. 1A at 2.) More specifically, AWHR states that through its "Lifetime Water Heater Plan" (hereinafter, "Plan") it provides:

> quality equipment, plumbing professionals, and a service guarantee that supplies [the customer] with a lifetime of worry-free hot water for a low monthly fee. With [the P]lan [, the customer] eliminate[s] the costly upfront investment of purchasing a water heater, the ongoing expense for future repairs and replacement, and the uncertainty that comes from not knowing who will respond to [a] hot water emergency or when.

(Pet'r Des'g Evid. Ex. 1A at 3.)

During the years at issue, customers in Indiana contracted with AWHR for its Plan. Pursuant to the terms of the written agreements, AWHR provided the customer a new or reconditioned water heater "at no charge."[1] (*See* Pet'r Des'g Evid. Ex. 1B at 1 (footnote added).) The agreements also provided that AWHR would bear the expense of installing the water heater in the customer's home or business. (*See* Pet'r Des'g Evid. Ex. 1B at 1.) Finally, AWHR agreed that it would make any repairs (including replacement, if necessary) to the water heater during the term of the agreement with the customer.[2] (*See* Pet'r Des'g Evid. Ex. 1B at 1 (footnote added).)

In return, the customer agreed to pay a monthly fee to AWHR. (*See* Pet'r Des'g Evid. Ex. 1B at 1.) The customer acknowledged that AWHR retained ownership and title to the water heater at all times. (*See* Pet'r Des'g Evid. Ex. 1B at 4.) Accordingly, the customer agreed "not to remove, transfer, tamper with, adjust or repair [the water heater] or remove the tag attached to [it] evidencing [AWHR's] ownership[.]" (Pet'r Des'g Evid. Ex. 1B at 2.) Furthermore, the customer agreed to provide AWHR with "access to the [water heater] at all reasonable times for the purpose of examining[ ] and repairing [it]." (Pet'r Des'g Evid. Ex. 1B at 2.) The agreements also provided that upon their expiration (including by reason of customer default), AWHR was permitted to enter the premises to disconnect and remove the water heater. (*See* Pet'r Des'g Evid. Ex. 1B at 2, 4.)

In 2006, after completing an audit, the Department determined that AWHR should have collected sales tax from its Indiana customers during the years at issue. More specifically, the Department found that through its Plan, AWHR was leasing tangible personal property to its customers, thereby making the transactions subject to sales tax pursuant to Indiana Code § 6–2.5–4–10. Consequently, the Department assessed AWHR with a sales tax liability, a 10% negligence penalty, and interest, totaling $557,625.19.

---

1. AWHR acquired these water heaters in a 2003 bulk transaction with Indiana Michigan Power Company, American Electric Power Service Corporation, and some of their affiliates (collectively, "AEP"). More specifically, AWHR purchased AEP's interests in certain water heaters already installed in buildings in Indiana, AEP's rights and obligations under contracts with respect to those water heaters, and certain uninstalled water heaters that were stored in Indiana. (Pet'r Des'g Evid. Ex. 1 ¶¶ 2, 4.)

2. An agreement was for a term of twelve months; if a customer desired to continue the relationship after the initial term, however, the agreement was renewable on a month-to-month basis. (Pet'r Des'g Evid. Ex. 1B at 4.)

AWHR protested the assessment and the Department held a hearing on March 19, 2007. On March 30, 2007, the Department issued a letter of findings denying AWHR's protest.

On October 9, 2007, AWHR filed an original tax appeal. On September 19, 2008, AWHR filed a motion for summary judgment. On December 2, 2008, the Department filed a cross-motion for summary judgment. The Court conducted a hearing on the parties' motions on February 2, 2009. Additional facts will be provided as necessary.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Horseshoe Hammond, LLC v. Indiana Dep't of State Revenue*, 865 N.E.2d 725, 727 (Ind. Tax Ct.2007), *review denied.*

## DISCUSSION AND ANALYSIS

Sales tax "is imposed on retail transactions made in Indiana." IND.CODE ANN. § 6–2.5–2–1 (West 2003). "A person ... is a retail merchant making a retail transaction when he rents or leases tangible personal property to another person[.]" IND. CODE ANN. § 6–2.5–4–10(a) (West 2003). For purposes of Indiana's sales tax, a "[l]ease' or 'rental' means any transfer of possession or control of tangible personal property for a fixed or indeterminate term for consideration and may include future options to purchase or extend." [3]

IND.CODE ANN. § 6–2.5–1–21(a) (West 2004) (footnote added).

On appeal, AWHR argues that the Department's assessment of sales tax against it is erroneous for two reasons. First, AWHR asserts that because it never transferred possession and control of the water heaters to its customers, it did not "lease" them. In the alternative, AWHR claims that the water heaters were real property, not tangible personal property. The Court will address each of these arguments in turn.

AWHR maintains that because it was obligated to provide repair service during the term of the agreements, it could not, and did not, relinquish its possession and control over the water heaters to its customers. (*See* Pet'r Br. Supp. Mot. Summ. J. (hereinafter, "Pet'r Br.") at 18, 20.) (*See also* Pet'r Des'g Evid. Ex. 1B at 1 (stating that customer "ha[s] no option to purchase the [water heater] at any time").) In other words, AWHR explains that its customers did not possess or control the water heaters because AWHR "retained incidents of ownership ... and the obligation to pay for and arrange for repairs and replacements, and [it] expressly prohibited the customer[s] from 'removing, transferring, tampering with, or repairing' the water heaters." (Pet'r Resp. Resp't Cross[-]Mot. Summ. J. (hereinafter, "Pet'r Resp. Br.") at 2.)

■ Whether a lease arrangement in fact exists depends on the purported lessee's possession and control over the property involved. *Mason Metals Co., Inc. v. Indiana Dep't of State Revenue*, 590 N.E.2d 672, 674 (Ind. Tax Ct.1992) (cita-

---

**3.** While this statutory definition "applies only to leases or rentals entered into after June 30, 2003," *see* IND.CODE ANN. § 6–2.5–1–21(d) (West 2004), the transfer of possession and control was considered determinative as to whether a lease existed even prior to that. *See, e.g., Mason Metals Co., Inc. v. Indiana Dep't of State Revenue*, 590 N.E.2d 672, 674–75 (Ind. Tax Ct.1992).

tion .omitted). Furthermore, tax consequences are determined based on the substance, not the form, of a transaction. *Bethlehem Steel Corp. v. Indiana Dep't of State Revenue*, 597 N.E.2d 1327, 1331 (Ind. Tax Ct.1992) (citation omitted), *aff'd by* 639 N.E.2d 264 (Ind.1994).

■ Given the facts of this case, AWHR's customers possessed and controlled the water heaters. Indeed, the water heaters were installed in the customers' homes and businesses. (*See* Pet'r Br. at 4 (explaining that the water heaters were "physically integrated into ... the plumbing systems and electrical systems of [the] customers' buildings").) To the extent AWHR claims that it had access to the water heaters "at all reasonable times," that access was ultimately controlled by the customer.[4] The customers used the water heaters: by turning on the hot-water tap, they decided when they wanted hot water and how much of it they needed (and, therefore, they controlled the water heater's operation). The customers supplied the water and electricity necessary for the water heaters' operation. Accordingly, the Court finds that AWHR's customers had the requisite possession of, and control over, AWHR's water heaters to characterize the transactions as lease transactions.[5],[6]

---

4. In the event a customer required service, the customer was to contact AWHR's service hotline, which was staffed twenty-four hours a day, seven days a week. (Pet'r Des'g Evid. Ex. 1 ¶ 7.) AWHR, in turn, contracted out the service work (including installations) to local plumbing professionals/contractors. (*See* Pet'r Des'g Evid. Ex. 1 ¶¶ 5, 8.) Nevertheless, the customer determined the time by which AWHR's representative could access the premises.

5. AWHR complains that this result is "unfair" because its position was entirely consistent with that taken by the Department in several other cases with "remarkably similar" facts. (*See* Pet'r Br. Supp. Mot. for Summ. J. (hereinafter, "Pet'r Br.") at 21–27.) For instance, AWHR contends there is "no legal distinction" between its case and those in which the Department issued letters of finding that held that taxpayers who sold liquid propane were not leasing to their customers the tanks in which the propane was stored, despite the fact that the tanks were physically located on the customers' property and the customers paid a fee to use the tanks pursuant to lease agreements. (*See* Pet'r Br. at 21–22 (referring to Pet'r Des'g Evid. Exs. 5, 6).)

The Department provides advice to individual taxpayers in many different forms and based upon very specific factual situations. *See* 45 Ind. Admin. Code 15–3–2(d)(1) (2003). Consequently, taxpayer rulings are very limited in their application: only the taxpayer to whom the ruling was issued is entitled to rely on it, and, even then, only with respect to the particular fact situation provided in the taxpayer's written application for the ruling. *See id.* at (d)(3). In the letter of findings upon which AWHR relies, the Department explained that the propane tanks were not being leased because they were not the "object" of the transaction between the sellers and their customers. In other words, the sellers were not leasing the propane tanks to the customers because their "interest lies in selling [liquid propane] ... and receiving compensation for the cost of [delivering it to them]. The customers' [only] interest is in obtaining that fuel.... The fact that the sale of propane necessarily involves the use of a storage container located on the customers' property does not alter the nature of th[at] transaction." (Pet'r Des'g Evid. Ex. 5 at 4.) (*See also* Pet'r Des'g Evid. Ex. 6 at 1–2.) In this case, however, it is quite clear that the "object" of the transaction between AWHR and its customers is not for the use of a storage container; rather, it is for an appliance that performs a mechanical function. Accordingly, the Court finds that these letters of finding lend little support to AWHR's position.

6. AWHR also claims that based on how the Department's own witness answered a line of questioning during a deposition, the Department conceded that AWHR did not transfer possession and control over the water heaters to its customers. (*See* Pet'r Resp. Resp't Cross[-]Mot. Summ. J. (hereinafter, "Pet'r Resp. Br.") at 3–4 (referring to Pet'r Des'g Evid. Ex. 2 at 42–43).) Whether or not the Department's witness made such a concession

In the alternative, AWHR argues that its transactions were not subject to sales tax because "[t]o the extent [it was] ... 'renting' [the] installed water heaters, it was renting an interest in realty[,]" not tangible personal property. (Pet'r Resp. Br. at 10.) AWHR has employed the following rationale to support its claim:

> Indiana's sales and use tax statutes do not define "real property" or "personal property"[7];
>
> The phrase "tangible personal property" must therefore be given its ordinary meaning: " 'any movable [ ] thing that is subject to ownership and not classified as real property' ";
>
> For purposes of Indiana's property tax, a water heater is considered a component of the structure in which it is installed (i.e., real property);
>
> There is no reason to treat water heaters differently for purposes of sales tax than for purposes of property tax.

(*See* Pet'r Br. at 10–14, 16 (citations omitted) (footnote added).) As further support for its position, AWHR cites to the Department's own informational bulletins that explain that water heaters, once installed, become real property.[8] (*See* Pet'r Br. at 14–15 (footnote added).) (*See also, e.g.,* Pet'r Des'g Evid. Ex. 3 at 2 (stating that for purposes of sales tax, water heaters, as "construction materials," are "tangible personal property *intended for*

incorporation in or improvement to real property*" (emphasis added)).)

Assuming AWHR was leasing real property and therefore not required to collect sales tax from its customers on the transactions, it owes sales tax to the Department for a different, although somewhat related, reason. Indeed, as the Department's aforementioned informational bulletins explain, water heaters, *prior to their installation,* are tangible personal property. (*See* Pet'r Des'g Evid. Ex. 3 at 2.) "The general rule ... that all sales of tangible personal property are taxable ... is not changed when a construction contractor converts tangible personal property into real property by attachment. [Thus, a]ll construction materials purchased by a construction contractor are taxable." (Pet'r Des'g Evid. Ex. 3 at 1.) *See also* IND.CODE ANN. § 6–2.5–4–9 (West 2003) (explaining that a retail transaction occurs when a person sells tangible personal property which "is to be added to a structure or facility by the purchaser[ ] and [ ] after its addition to the structure or facility, [it] become[s] a part of the real estate on which the structure or facility is located"). Accordingly, AWHR should have paid sales tax on its purchase of the water heaters from AEP. *See, e.g.,* 45 IND. ADMIN. CODE 2.2–3–8(a) (2003) (explaining that the conversion of the water heaters into real property would not have relieved AWHR from its sales tax liability related to its acquisition of the water heaters when

---

is of little assistance to AWHR, as the issue (whether AWHR's customers possessed and controlled the water heaters) requires a legal conclusion to be made by this Court, not the Department.

7. Effective January 1, 2004, however, "tangible personal property" was defined for purposes of the sales and use tax statutes as "personal property that[ ] can be seen, weighed, measured, felt, or touched; or [that] is in any other manner perceptible to the

senses." IND.CODE ANN. § 6–2.5–1–27 (West 2004).

8. AWHR explained that while contractually it retained the right to remove a water heater upon the termination of an agreement, it intended all along that the installation be permanent: at the end of an agreement term, it abandoned its rights to the water heater because the cost to remove it was not "economically justifiable." (*See* Pet'r Des'g Evid. Ex. 1 ¶¶ 11–12.)

they were tangible personal property). AWHR admits, however, that it did not.[9] (*See* Resp't Des'g Evid. Ex. D at 50–52 (footnote added).)

## CONCLUSION

█ For the foregoing reasons, the Department's assessment of sales tax liability against AWHR is AFFIRMED.[10]

SO ORDERED.

## ORDER OF PUBLICATION

Respondent, Indiana Department of State Revenue, by counsel, files its Motion for Publication of Memorandum Decision. The Court, being duly advised in the premises, now finds that the motion should be GRANTED.

IT IS THEREFORE ORDERED as follows:

1. Respondent's "Motion for Publication of Memorandum Decision" is hereby granted and the decision handed in the case of *AWHR America's Water Heater Rentals, LLC v. Ind. Dep't of State Revenue*, 49T10-0710-TA-50 (Ind. Tax Ct. July 15,

---

9. During the Department's administrative hearing in this matter, AWHR claimed that it either paid sales tax when it bought the water heaters or it remitted use tax on the water heaters when it installed them in the customers' structures. (*See* Pet'r Des'g Evid. Ex. 1E at 7.) Nevertheless, AWHR did not present any documentation to the Department to substantiate these claims. (*See* Pet'r Des'g Evid. Ex. 1E at 7.)

During oral argument, AWHR claimed that its purchase of water heaters from AEP was exempt. (*See* Oral Argument Tr. at 15–16 (stating that "when you have a lump sum improvement to realty, that is not a taxable transaction for sales tax purposes" and that the transaction was "an isolated or occasional sale").) AWHR did not, however, present a fully-developed argument supported by legal authority to demonstrate that its transaction with AEP was exempt from taxation for these reasons.

10. On a final note, AWHR argues that the Department had no basis for imposing the 10% negligence penalty on the sales tax assessment under the penalty statute, Indiana Code § 6–8.1–10–2.1. More specifically, AWHR argues that the Department's imposition of the penalty was improper because AWHR had "reasonable cause" to believe that it did not owe sales tax and the Department failed to prove that AWHR was negligent in believing as much. (*See* Pet'r Br. at 26, 31.) *See also supra* note 5. The Court disagrees.

The Department's administrative regulation states:

"[n]egligence" on behalf of a taxpayer is defined as the failure to use such reasonable care, caution, or diligence as would be expected of an ordinary reasonable taxpayer. Negligence would result from a taxpayer's carelessness, thoughtlessness, disregard or inattention to duties placed upon the taxpayer by the Indiana Code or [D]epartment regulations. Ignorance of the listed tax laws, rules and/or regulations is treated as negligence.... Negligence shall be determined on a case by case basis according to the facts and circumstances of each taxpayer.

\*　　\*　　\*

In order to establish reasonable cause, the taxpayer must demonstrate that it exercised ordinary business care and prudence in carrying out or failing to carry out a duty giving rise to the penalty imposed[.] ... Reasonable cause is a fact sensitive question and thus will be dealt with according to the particular facts and circumstances of each case.

45 IND. ADMIN. CODE 15–11–2(b), (c) (2003). AWHR misinterpreted the significance of the Department's position in the letters of finding regarding the propane tanks; such misinterpretation clearly constitutes negligence under the Department's regulation. Furthermore, it was AWHR who bore the burden of showing that it had reasonable cause to believe that it did not owe sales tax. *See id. See also* IND. CODE ANN. § 6–8.1–10–2.1(d) (West 2003). The Department's imposition of a 10% penalty is affirmed.

2010) marked "Not for Publication,"
is now ordered to be published.