ATTORNEYS FOR PETITIONER:
**RANDAL J. KALTENMARK**
**ZIAADDIN MOLLABASHY**
BARNES & THORNBURG LLP
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**EVAN W. BARTEL**
**JESSICA REAGAN GASTINEAU**
**WINSTON LIN**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Aug 01 2017, 4:25 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

RICHARDSON'S RV INC., )
)
Petitioner, )
)
v. ) Cause No. 49T10-1504-TA-00016
)
INDIANA DEPARTMENT OF STATE )
REVENUE, )
)
Respondent. )

ORDER ON PETITIONER'S
MOTION FOR SUMMARY JUDGMENT

**FOR PUBLICATION**
**August 1, 2017**

WENTWORTH, J.

Richardson's RV Inc. has appealed the Indiana Department of State Revenue's final determination that it properly assessed additional sales tax liabilities for the 2010, 2011, and 2012 tax years. The matter is currently before the Court on Richardson's' Motion for Summary Judgment, which the Court grants.

**FACTS AND PROCEDURAL HISTORY[1]**

Richardson's is an Indiana corporation that owns and operates a recreational vehicle dealership in Middlebury, Indiana. (See Pet'r Des'g Evid., App. 1 ¶¶ 6, 7, 10.) During the years at issue, Richardson's sold camper trailers, travel trailers, motor homes, fifth wheels, and toy haulers (collectively "RVs") as well as related repair parts and repair services. (See Pet'r Des'g Evid., App. 1 ¶ 10.) Richardson's also maintained a website that allowed out-of-state customers to shop for RVs. (See Resp't Des'g Evid., Ex. R-8 at 39-43.)

In a typical sales transaction from Richardson's' website, once a price was agreed upon, Richardson's would send a purchase order to the customer to be signed and returned with the deposit. (See Resp't Des'g Evid., Ex. R-8 at 43.) Richardson's would then arrange a time for the customer to come to the dealership to walk through the vehicle. (See Resp't Des'g Evid., Ex. R-8 at 49-50.) If the vehicle met the customer's expectations, the customer completed the paperwork (e.g., financing agreements, warranty, and titling documents) in the dealership office. (See Resp't Des'g Evid., Ex. R-8 at 51-52, 58-60.)

Richardson's' regular business practice for transferring physical possession of the vehicle to a customer varied based on whether the customer resided in a state with a

---

[1] The Department has designated evidence that contains confidential information. Accordingly, the Court will provide only that information necessary for the reader to understand its disposition of the issues presented. See generally Ind. Administrative Rule 9.

reciprocal agreement with Indiana.[2]  (See Resp't Des'g Evid., Ex. R-8 at 51-64; Pet'r Des'g Evid., App. 1 ¶¶ 44-48.)  If a customer resided in a state with a reciprocal agreement with Indiana ("reciprocal customer"), Richardson's transferred physical possession of the vehicle to the customer at its dealership.  (See Pet'r Des'g Evid., App. 1 ¶ 45.)  When a customer did not reside in a state with a reciprocal agreement with Indiana ("non-reciprocal customer"); however, Richardson's informed them of Indiana's sales tax rate and asked them whether they preferred to pay their home state's sales/use tax or Indiana's sales tax on their purchase.  (See Resp't Des'g Evid., Ex. R-8 at 54-58.)  If the non-reciprocal customer chose to pay the tax to their home state, Richardson's transferred possession of the vehicle to the customer at a location seven miles away from the dealership in Michigan, a state without a reciprocal agreement with Indiana.[3]  (See Pet'r Des'g Evid., App. 1 ¶¶ 44, 46.)  (See also Resp't Des'g Evid., Ex. R-8 at 129.)

At the Michigan transfer location, an employee of Richardson's and the customer both signed a letter stating that Richardson's had physically delivered the vehicle to the customer in Michigan ("Delivery Letter").  (See Pet'r Des'g Evid., App. 1 ¶¶ 54-55; Ex. E-1 through E-155.)  (See also Resp't Des'g Evid., Ex. R-8 at 64.)  Richardson's did not

---

[2] A reciprocal agreement exempts certain out-of-state RV buyers from paying Indiana's sales tax on their purchase if Indiana purchasers receive a similar exemption for a purchase in their states.  See IND. CODE § 6-2.5-5-39(c)(5) (2010).  During the years at issue, Arizona, California, Florida, Hawaii, Massachusetts, Michigan, Mississippi, North Carolina, and South Carolina did not have reciprocal agreements with Indiana.  (See Pet'r Des'g Evid., App. 1 ¶ 44.)

[3] Richardson's delivered the vehicles to its non-reciprocal customers at a vacant lot near a Speedway gas station located in White Pigeon, Michigan.  (See Pet'r Des'g Evid., App. 1 ¶ 46.) (See also Resp't Des'g Evid., Ex. R-7 at 92-94; Ex. R-8 at 61, 129.)

collect Indiana sales tax from customers who took possession of the RV in Michigan.[4] (See Pet'r Des'g Evid., App. 1 ¶ 26, Ex. C.)

On February 7, 2014, the Department completed the sales tax audit of Richardson's' business for the years at issue and concluded that Richardson's should have collected and remitted Indiana sales tax on 139 sales to non-reciprocal customers.[5]  (See Pet'r Des'g Evid., App. 1 ¶¶ 21, 26, 61, Exs. A, C, G.)  The Department issued proposed assessments on March 10, 2014, and on March 12, 2014, Richardson's filed its protest, which the Department denied in its LOF dated November 25, 2014.  (See Pet'r Des'g Evid., App. 1 ¶ 22, Ex. B; App. 7 ¶¶ 27, 31, 33; App. 8 ¶¶ 27, 31, 33.)  Richardson's filed a Request for Rehearing, which the Department denied on February 26, 2015.  (See Pet'r Des'g Evid., App. 7 ¶¶ 38-39; App. 8 ¶ 38-39.)

On April 23, 2015, Richardson's filed its Original Tax Appeal.  On September 18, 2015, Richardson's filed its Motion for Summary Judgment, and the hearing on the Motion was held on April 7, 2016.  Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

Summary judgment is proper only when the designated evidence demonstrates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Ind. Trial Rule 56(C).  When reviewing a motion for summary

---

[4] When Richardson's assisted non-reciprocal customers with financing for a purchase, however, the lenders/financial institutions required Richardson's to secure title to the vehicles in the customers' home state.  (See Resp't Des'g Evid., Ex. R-8 at 60.)  In these cases, Richardson's charged the customer sales/use tax at the rate of the titling state and remitted it to that state. (See Resp't Des'g Evid., Ex. R-8 at 61.)

[5] There were 145 transactions at issue that included 3 wholesale transactions to a Canadian wholesaler/franchise dealer and 3 sales to reciprocal customers residing in Maine and Nebraska.  (See Pet'r Des'g Evid., App. 1 ¶¶ 31-33, 43, Ex. C.)  During the hearing, however, the Department conceded that those 6 transactions were exempt from taxation.  (See Hr'g Tr. at 37.)

4

judgment, the Court will construe all properly asserted facts and reasonable inferences drawn therefrom in favor of the non-moving party. See Scott Oil Co. v. Indiana Dep't of State Revenue, 584 N.E.2d 1127, 1128-29 (Ind. Tax Ct. 1992).

**LAW**

Indiana imposes a sales tax "on retail transactions made in Indiana." IND. CODE § 6-2.5-2-1(a) (2010). A "'[r]etail transaction' means a transaction of a retail merchant that constitutes selling at retail[.]" IND. CODE § 6-2.5-1-2(a) (2010). A person is a retail merchant "selling at retail when, in the ordinary course of his regularly conducted trade or business, he . . . acquires tangible personal property for the purpose of resale[,] and [ ] transfers that property to another person for consideration." IND. CODE § 6-2.5-4-1(b) (2010) (amended 2013).

Indiana courts "refer to the law of sales for assistance in interpreting tax laws that relate to the sale of goods." Monarch Beverage Co., Inc. v. Indiana Dep't of State Revenue, 589 N.E.2d 1209, 1212 (Ind. Tax Ct. 1992) (citations omitted). Indiana's codification of the Uniform Commercial Code (UCC) under Indiana Code § 26-1-2-106(1) defines a "sale" as "the passing of title from the seller to the buyer for a price[.]" IND. CODE § 26-1-2-106(1) (2010).

Indiana Code § 26-1-2-401 explains when and where title passes in two different circumstances:

> (2) Unless otherwise explicitly agreed, title passes to the buyer <u>at the time and place at which the seller completes his performance with reference to the physical delivery of the goods</u>, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place[.]

> \*      \*      \*      \*      \*

5

(3) Unless otherwise explicitly agreed, <u>where delivery is to be made without moving the goods</u>: (a) if the seller is to deliver a tangible document of title, title passes <u>at the time when and the place where he delivers [title] documents</u> and if the seller is to deliver an electronic document of title, title passes when the seller delivers the document[.]

IND. CODE § 26-1-2-401(2), (3)(a) (2010) (emphasis added). In other words, the general rule is that title passes, and a sale is completed, at the location of delivery of the goods themselves, if they are moved for delivery, or of the title documents, if they are not.

## ANALYSIS

Richardson's' Motion presents one issue: whether its sales of RVs to non-reciprocal customers were made "in Indiana" as a matter of law, subjecting them to Indiana sales tax.[6] Richardson's claims that its sales to non-reciprocal customers were <u>not</u> made "in Indiana" because it provided physical delivery of the RVs in Michigan, not in Indiana. (See Br. of Pet'r Supp. Mot. Summ. J. ("Pet'r Br.") at 24-26.) On the contrary, the Department contends that the sales <u>were</u> made "in Indiana" because (1) the title was delivered in Indiana; (2) the delivery of possession in Michigan should be disregarded as tax avoidance; and (3) the non-reciprocal buyers are not exempt and the Legislature intended that they pay Indiana's sales tax. (See Resp't Br. Opp'n Pet'r Mot. Summ. J. ("Resp't Br.") at 8-22.)

### 1. Delivery

The Department first claims Richardson's' sales of RVs to non-reciprocal

---

[6] In its Audit Summary and Letter of Findings, the Department required Richardson's to produce sales invoices or purchase orders to establish out-of-state delivery for the transactions at issue, and it found transactions that lacked this specific type of evidence were taxable. (See Pet'r Des'g Evid., App. 1 ¶¶ 21-22, Exs. A, B.) At the hearing, however, the Department conceded that this specific type of documentation was not required as a matter of law. (See Hr'g Tr. at 38.) Therefore, the Court will not address this issue.

customers were completed in Indiana under Indiana's statutes, because title passes upon delivery, which occurred at the Indiana dealership. (See Resp't Br. at 9-12.) Generally, title to goods passes from the seller to the buyer in accordance with the explicit agreement of the parties. See I.C. § 26-1-2-401(1). Without an explicit agreement, however, title passes upon delivery under either Indiana Code § 26-1-2-401(2), which applies when goods are physically delivered, or Indiana Code § 26-1-2-401(3), which applies when delivery is made without moving the goods. See I.C. § 26-1-2-401(2), (3)(a).

The Department asserts that Indiana Code § 26-1-2-401(3) governs Richardson's' sales of RVs to non-reciprocal customers because delivery could be made without moving the RVs from the Indiana dealership. (See Resp't Br. at 11.) In support, the Department notes that "non-reciprocal customers' RVs are just as ready to be driven or towed off [of the Indiana dealership lot] as reciprocal customers' RVs." (See Resp't Br. at 12 (citing Resp't Des'g Evid., Ex. R-8 at 49-51; Resp't Des'g Evid., Ex. R-7 at 28-29, 95).) In addition, the designated evidence shows that both Richardson's' reciprocal and non-reciprocal customers alike completed the warranty, titling, financing, and odometer forms at the Indiana dealership. (See Resp't Des'g Evid., Ex. R-8 at 51-53, 58-59.) Consequently, the Department concludes that the RVs did not need to be moved for delivery to occur, and under Indiana Code § 26-1-2-401(3), the sales were completed in Indiana once Richardson's delivered the "tangible document[s] of title" at the dealership. (See Resp't Br. at 9-16; Hr'g Tr. at 47.) See also I.C. § 26-1-2-401(3).

On the other hand, Richardson's claims that Indiana Code § 26-1-2-401(2)

7

governs its sales of RVs to non-reciprocal customers and its transactions were not made "in Indiana" because it physically delivered the goods in Michigan. (See Pet'r Br. at 25-26.) Furthermore, Richardson's explains that its delivery of the RVs in Michigan expressly countermands the application of Indiana Code § 26-1-401(3) because the physical delivery of goods controls even if documents of title may have been delivered at a different place or time. (See Pet'r Reply Br. Supp. Mot. Summ. J. at 16.) See also I.C. § 26-1-2-401(2).

The outcome of this case, however, is unaffected by which provision applies. Each opens with the words "Unless otherwise explicitly agreed," indicating that an explicit agreement between the buyer and seller would trump the provisions of either subsection. See I.C. § 26-1-401(2), (3). The parties have not provided a written contract that explicitly expresses an agreement between them; nonetheless, the designated evidence indicates that an explicit agreement to deliver the vehicles in Michigan was made.

For example, Richardson's presented unrebutted testimony that non-reciprocal customers were asked whether they wanted to pay tax to their home state on their purchase rather than to Indiana, and if so, the RV was physically delivered to them outside of Indiana. (See Resp't Des'g Evid., Ex. R-8 at 55.) (See Pet'r Des'g Evid., App. 1 ¶ 49 (explaining that Richardson's occasionally transported vehicles to various out-of-state locations upon customer request). Moreover, both Richardson's and its non-reciprocal customers signed Delivery Letters that acknowledged that the RVs were physically delivered in Michigan. (See Pet'r Des'g Evid., App. 1 ¶¶ 54-55, Ex. E-1 through E-155.) (See Resp't Des'g Evid., Ex. R-8 at 64.) These actions reveal the

8

existence of an explicit agreement, a meeting of the minds, between the buyer and the seller regarding the location of delivery that is consistent with Indiana Code § 26-1-2-401(2), but overrides the provisions of Indiana Code § 26-1-2-401(3). See I.C. § 26-1-2-401(2), (3). Under either provision, therefore, the sales at issue were made and title passed upon physical delivery in Michigan.

In the alternative, the Department asserts that even if Indiana Code § 26-1-401(3) does not apply, delivery to non-reciprocal customers must have occurred in Indiana because delivery precedes inspection and acceptance in a "typical" sales transaction. (See Hr'g Tr. at 50-52.) See also David R. Webb Co., Inc. v. Indiana Dep't of State Revenue, 826 N.E.2d 166, 171 (Ind. Tax Ct. 2005) (explaining that under Indiana's UCC, "the sequence of events in a 'typical' sales transaction is: 1) delivery; 2) inspection; and 3) acceptance") (emphasis added). More specifically, the Department claims that inspection and acceptance took place when Richardson's' customers walked through the RVs and signed title, financing, and warranty documents at the Indiana dealership. (See Hr'g Tr. at 52-53.) Therefore, the Department concludes that delivery necessarily had to have occurred in Indiana. (See Hr'g Tr. at 50-53.)

Determining the location of a sale, however, is a fact sensitive determination. See Webb, 826 N.E.2d at 172 (stating "[t]he determination of whether certain activities constitute local transactions or interstate commerce 'must be made on a case by case basis'") (citation omitted). The designated evidence in this case demonstrates that the transactions at issue are not typical. Here, Richardson's' owner and several employees testified in affidavits that Richardson's' employees drove or towed the RVs at issue to a location in Michigan where the non-reciprocal customers took physical possession.

9

(See Pet'r Des'g Evid., App. 1 ¶¶ 46-48; App. 2 ¶¶ 10-12; App. 3 ¶¶ 10-13; App. 4 ¶¶ 10-13; App. 5 ¶¶ 10-13; App. 6 ¶¶ 10-13.) Thus, delivery occurred in Michigan – after inspection and acceptance – and title passed outside of Indiana. Accordingly, the Court finds that as a matter of law the sales transactions at issue were not made "in Indiana."

## 2. Tax Avoidance

The Department contends that Richardson's' physical delivery of RVs to non-reciprocal customers in Michigan should be disregarded as an impermissible attempt to avoid Indiana sales tax. (See Resp't Br. at 18-22.) See also Indiana Dep't of State Revenue v. Belterra Resort Indiana, LLC, 935 N.E.2d 174, 179 (Ind. 2010) ("[A] transaction structured solely for the purpose of avoiding taxes with no other legitimate business purpose will be considered a sham for taxation"). The designated evidence, however, does not show that Richardson's made Michigan deliveries to avoid Indiana's sales tax, but instead that the purpose of the Michigan deliveries was to ensure its customers incurred tax liability in the proper jurisdiction: where the vehicles would ultimately be used. (See Resp't Des'g Evid., Ex. R-8 at 103.)

In his deposition, Richardson's' Vice President and Chief Financial Officer, Mark Richardson, stated:

> I don't think the word 'avoid' is correct. . . . [I]t's a matter of getting the proper jurisdiction to get the proper use tax. I mean, this is, ultimately, a use tax. The state or the states have agreed, and 41 of the states have agreed that it's a destination tax. In the nine-ones, they don't have an agreement, but it's still known that it's a destination tax. So the delivery is done to comply, to make sure that the proper jurisdiction gets the tax.

(Resp't Des'g Evid., Ex. R-8 at 9, 103.) He further testified that another reason Richardson's offered out-of-state delivery options was to ensure that its non-reciprocal

customers were not taxed in two jurisdictions on the same sales transaction:

> [U]ltimately, the issue here isn't paying the tax. It's being double taxed. They pay the tax. Every one of these customers pays tax. There's some states that . . . have no sales tax. A lot of those are reciprocal states, and so those people don't pay tax. But nobody's getting out of anything here. The tax is getting paid. It's just a matter of . . . whether it's going to be in their home state where they're using it, or in Indiana where the dealership is located that, you know, gave them the best deal.

(Resp't Des'g Evid., Ex. R-8 at 69.) Moreover, he explained that Richardson's structured its business model in a manner that would facilitate competitive pricing:

> So not only do we save the freight, but our margins can be less. Our whole business model and everything is structured to do that. Basically, if your biggest sale feature is going to be price, it better be a good one. . . . So because of the lower overhead, the proximity to the factories, and just the overall business model, as far as a lot of the attention is paid to keep overhead down, to keep costs down, so we can keep our margins thin so we can offer the biggest discounts to people to entice them to come from all over the country, is the business model.

(Resp't Des'g Evid., Ex. R-8 at 24.)

In sum, Michigan deliveries were not made for the purpose of affording non-reciprocal customers a means to escape taxation or to free Richardson's from collecting and remitting sales tax on the transactions. Instead, the unrebutted evidence demonstrates that Richardson's' delivery procedures were designed to further the legitimate business purposes of ensuring tax is paid to the proper jurisdiction, avoiding double taxation, and maintaining competitive pricing. (See Resp't Des'g Evid., Ex. R-8 at 22-24, 69, 103.) Accordingly, Richardson's had legitimate business purposes for delivering RVs to its non-reciprocal customers in Michigan, and the Court will not disregard the deliveries in Michigan.

### 3. Exemption

11

Finally, the Department claims that the Indiana Legislature intended to subject all non-reciprocal buyers to Indiana's sales tax because they were omitted from the exemption under Indiana Code § 6-2.5-5-39. (See Resp't Br. at 16-18.) This statute exempts purchases of cargo trailers or recreational vehicles from Indiana's sales tax only if:

> (5) the cargo trailer or recreational vehicle will be titled or registered in a state or country that provides an exemption from sales, use, or similar taxes imposed on a cargo trailer or recreational vehicle that is purchased in that state or country by an Indiana resident and will be titled or registered in Indiana.
>
> A transaction involving a cargo trailer or recreational vehicle that does not meet the requirements of subdivision (5) is not exempt from the state gross retail tax

IND. CODE § 6-2.5-5-39(c) (2010). The Department's inference from the omission of non-reciprocal customers from the exemption is unreasonable, however, under these facts.

An exemption is only effective to shield a transaction from taxation if it is taxable in the first instance. Consequently, Richardson's' sales to non-reciprocal customers first must fall within the ambit of the imposition statute for an exemption to apply. Here, physical delivery does not occur in Indiana, and because the transactions at issue were not made in Indiana, they are not subject to Indiana's sales tax in the first place. See I.C. § 6-2.5-2-1(a). Moreover, regardless of the Legislature's intent in excluding non-reciprocal purchasers from the exemption, the exemption statute itself is just that – an exemption statute – not an imposition statute that imposes tax on these purchases. See generally I.C. § 6-2.5-5-39. Accordingly, the exemption statute has no effect on

these non-taxable transactions, and the Court will not deny summary judgment on this basis.[7]

## CONCLUSION

For the above-stated reasons, the Court GRANTS summary judgment in favor of Richardson's and AGAINST the Department, vacating the Department's proposed assessments of Indiana sales tax for the years at issue.

SO ORDERED this 1st day of August, 2017.

Martha Blood Wentworth, Judge
Indiana Tax Court

---

[7] Richardson's also asserts that the Department's sales tax assessments contained mathematical and legal errors and violated the United States and Indiana Constitutions. (See Br. of Pet'r Supp. Mot. Summ. J. ("Pet'r Br.") at 26-31.) Given the holding in favor of Richardson's, the Court will not address these arguments.

Distribution:    Randal J. Kaltenmark, Ziaaddin Mollabashy, Evan W. Bartel, Jessica Reagan Gastineau, Winston Lin