

FILED

Dec 05 2018, 1:35 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-TA-22

## Richardson's RV, Inc.
*Respondent (Petitioner below)*

–v–

## Indiana Department of State Revenue
*Petitioner (Respondent below)*

Argued: March 9, 2018 | Decided: December 5, 2018

Appeal from the Indiana Department of State Revenue,
Letter of Findings, No. 04-20140200

On Petition for Review from the Indiana Tax Court,
No. 49T10-1504-TA-16
The Honorable Martha Blood Wentworth, Judge

**Opinion by Justice Massa**

Chief Justice Rush and Justice Goff concur.
Justice David dissents with separate opinion in which Justice Slaughter joins.
Justice Slaughter dissents with separate opinion in which Justice David joins.

**Massa, Justice.**

Richardson's RV thought it could avoid paying Indiana sales tax if it took RVs it sold to certain out-of-state customers into Michigan before handing over the keys. The Indiana Department of Revenue quarreled with this understanding, telling Richardson's that it owed tax for those sales. On review, the Tax Court determined Richardson's owed no sales tax because it did not complete these transactions in Indiana.

We disagree. Because Richardson's structured these Michigan deliveries solely to avoid taxes with no other legitimate business purpose, we reverse the Tax Court and enter summary judgment in favor of the Department.[1] We remand, however, for a determination of the amount of tax Richardson's owes and for a determination of whether any independent, non-tax-related business purposes motivated four isolated deliveries to other locations in the United States and Canada.

# Facts and Procedural History

Richardson's RV, Inc. is an Indiana corporation that owns and operates an RV dealership in Middlebury, Indiana.[2] Although Richardson's sells some RVs onsite, many of its sales happen online. In typical online sales during the period at issue, once the parties agreed on a price, Richardson's sent a purchase order to the customers to sign and return with deposit payments. Richardson's then ordered the RVs from the manufacturers and inspected them for any defects. After curing any found deficiencies, Richardson's gassed up the RVs and contacted the customers to come to the dealership.

---

[1] Even though the Department did not move for summary judgment at the Tax Court, "[w]hen any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Ind. Trial Rule 56(B).

[2] Richardson's sells many types of recreational vehicles—camper trailers, travel trailers, fifth-wheels, toy haulers, and motor homes—which collectively we call RVs.

When the customers arrived at the dealership, they inspected the RVs for any flaws; if the customers found any, Richardson's typically fixed the problems onsite.[3] Then Richardson's took the customers to its financing office, where the customers filled out and signed documents necessary to obtain title to and registration for the RVs. And, at least sometimes, Richardson's completed odometer readings at the dealership. Next, the customers paid Richardson's directly or completed any financing agreements. Finally, after completing insurance arrangements, Richardson's provided the customers with temporary Indiana license plates to place on the RVs.

But when it came time to physically transfer possession of the RVs, the protocol depended on a customer's state of residence. Customers from Indiana—or from one of the forty states with reciprocal tax exemption agreements under Indiana Code section 6-2.5-5-39(c)—drove their RVs directly off the dealership lot. Customers from the nine states *without* reciprocal tax exemption agreements, however, could choose to pay sales tax either at Indiana's rate or at their home state's rate, with customers ostensibly choosing the lesser of the two.[4]

For the non-reciprocal-state customers choosing to pay their home state's rate, the delivery method Richardson's employed was unorthodox. With the customers following behind, Richardson's took the RVs to a Speedway gas station fewer than three miles north of the state border into the non-reciprocal state of Michigan. After arriving at this Speedway that functioned as the delivery location, only two simple tasks remained for the customers accepting these Michigan Deliveries: (1) sign confirmations of delivery and (2) receive the keys to their new RVs. These Michigan Deliveries were "just for tax purposes." Resp.'s App. Vol. VI, pp. 107–08.

---

[3] If defects required extensive repairs, Richardson's would at times pay for the customers to stay in a Middlebury hotel overnight.

[4] During the years at issue, Arizona, California, Florida, Hawaii, Massachusetts, Michigan, Mississippi, North Carolina, and South Carolina did not have reciprocal agreements with Indiana. Foreign countries are non-reciprocal too.

But in four Non-Michigan Deliveries, Richardson's deviated from this norm for non-reciprocal-state customers and delivered RVs to them in California, North Dakota, Nova Scotia, and Buchanan, Michigan.[5]

Richardson's collected no Indiana sales tax on any of the Michigan or Non-Michigan Deliveries. After an audit, the Department issued proposed assessments to Richardson's for the years at issue, which totaled nearly $250,000 in unpaid taxes and interest on the Michigan and Non-Michigan Deliveries.[6] Following an unsuccessful appeal to the Department, Richardson's petitioned the Tax Court for review. *Richardson's RV Inc. v. Indiana Dep't of State Revenue*, 80 N.E.3d 293 (Ind. Tax Ct. 2017), *vacated*.

Following briefing and a hearing, the Tax Court granted summary judgment for Richardson's, concluding that it owed no Indiana sales tax for any of these transactions because (1) an explicit agreement between non-reciprocal-state customers and Richardson's mandated delivery of the vehicles in Michigan, (2) Richardson's designed the trips to Michigan to further legitimate business purposes, and (3) Indiana's exemption statute did not apply to these transactions because "as a matter of law the sales transactions at issue were not made 'in Indiana.'" *Id.* at 296–99.

We granted the Department's petition for review. *See* Ind. Appellate Rule 63(A). And now we reverse.

## Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Tax Court Rule 10, which this Court concurrently adopted with the Tax Court commencing business in 1986, commands that we "shall not set aside the findings or judgment of the Tax

---

[5] We do not consider the delivery to Buchanan, Michigan as part of the Michigan Deliveries for reasons discussed in Section II.

[6] The Department at first proposed assessments on 145 sales for the years at issue. But after further investigation, it conceded that six transactions were exempt from taxation, arriving at the 139 sales at issue.

Court unless clearly erroneous." Pub. L. No. 291-1985, § 1, 1985 Ind. Acts 2278, 2279 (codified at Ind. Code § 33-26-1-1 (2004)) (establishing the Indiana Tax Court); July 18, 1986, Order Adopting Rules for the Indiana Tax Court (found in volume 494–496 of Ind. Cases ed. of N.E.2d at XXXIV) (adopting Rule 10's "clearly erroneous" standard). In other words, "[a]lthough this Court ordinarily reviews summary judgment orders de novo, we take a limited departure when reviewing summary judgments entered by the Tax Court," setting aside its decisions within its expertise when "we are definitely and firmly convinced that an error was made." *Merch. Warehouse Co. v. Indiana Dep't of State Revenue*, 87 N.E.3d 12, 16 (Ind. 2017) (internal quotation marks omitted).

## Discussion and Decision

State gross retail tax, commonly known as the Indiana sales tax, generally applies to "retail transactions made in Indiana." Ind. Code § 6-2.5-2-1(a) (1980). But not every RV transaction "made in Indiana" is subject to our sales tax: reciprocity agreements exempt some out-of-state buyers from paying our sales tax if they can show Indiana purchasers receive similar exemptions for purchases in their states. I.C. § 6-2.5-5-39(c) (2007); *Hamilton Cnty. Assessor v. SPD Realty, LLC*, 9 N.E.3d 773, 776 (Ind. Tax. Ct. 2014) (noting that "the taxpayer bears the burden of proving that it is entitled to the exemption that it seeks").

If, however, those non-residents live in states *without* reciprocity agreements with Indiana, RV sales are not exempt from our sales tax. I.C. § 6-2.5-5-39(c). Instead, the only way for these non-reciprocal-state customers to avoid paying Indiana sales tax is to take physical delivery of their RVs outside Indiana because "[s]ales of tangible personal property which are delivered to the purchaser in a state other than Indiana for use in a state other than Indiana are not subject to gross retail tax or use tax." 45 Ind. Admin. Code § 2.2-5-54(b).

But "[a] transaction structured solely for the purpose of avoiding taxes with no other legitimate business purpose will be considered a sham for taxation purposes." *Indiana Dep't of State Revenue v. Belterra Resort Indiana, LLC*, 935 N.E.2d 174, 179 (Ind. 2010) (internal quotation marks omitted).

Indeed, "the substance, rather than the form, of transactions determines their tax consequences." *Id.*; *see also Gregory v. Helvering*, 293 U.S. 465, 469 (1935) (where the Supreme Court put aside "the question of motive in respect of taxation" and instead "fix[ed] the character of the proceeding by what actually occurred").

"To determine the substance of a transaction, the court must consider all of the surrounding facts and the legal effect of the transaction." *Bethlehem Steel Corp. v. Indiana Dep't of State Revenue*, 597 N.E.2d 1327, 1332 (Ind. Tax Ct. 1992).

## I.  The Michigan Deliveries are subject to sales tax.

When personal property is delivered to the purchaser in a state other than Indiana solely to avoid paying sales tax—with no other legitimate business purpose—we will not "'exalt artifice above reality.'" *Belterra*, 935 N.E.2d at 180 (quoting *Gregory*, 293 U.S. at 470). Instead, we will consider these deliveries part of "retail transactions made in Indiana" subject to Indiana sales tax. I.C. § 6-2.5-2-1(a).

Richardson's argues that the Michigan Deliveries are non-taxable because three legitimate business purposes prompted them: (1) ensuring that customers paid taxes in the proper jurisdiction, (2) avoiding double taxation, and (3) maintaining competitive pricing.[7] But with these arguments, Richardson's asks this Court to elevate the form of these

---

[7] Richardson's made a few constitutional arguments in its summary judgment brief too. First, Richardson's argued that the proposed assessments violate the Commerce Clause of the United States Constitution. *See* U.S. Const. art. I, § 8, cl. 3. But because "[t]he Commerce Clause only requires that the states not discriminate against interstate commerce," *Bulkmatic Transp. Co. v. Dep't of State Revenue*, 715 N.E.2d 26, 34 (Ind. Tax Ct. 1999)—and these transactions occurred *in* Indiana—the Commerce Clause does not apply.

Richardson's also argued that the Department violated its Equal Protection and Equal Privileges and Immunities rights by subjecting its out-of-state sales to inconsistent standards. *See* U.S. Const. amend. XIV, § 1; Ind. Const. art. 1, § 23. But because "*individuals* are afforded equal protection guarantees, not activities," *RDI/Caesars Riverboat Casino, LLC v. Indiana Dep't of State Revenue*, 854 N.E.2d 957, 962 n.4 (Ind. Tax Ct. 2006), this argument fails too.

deliveries over their substance. And, tellingly, all these purposes are tax—not business—based. We find no legitimate business purpose motivating the Michigan Deliveries and so we consider them a sham for taxation purposes. *See Belterra*, 935 N.E.2d at 179.

First, Richardson's maintains that it did not pay the Indiana sales tax for the Michigan Deliveries to ensure that the proper jurisdiction received the tax payments for the RVs. It argues that Indiana adheres to the destination principle, which instructs that tax is properly paid "where the property is delivered to the ultimate consumer." Resp.'s Br. at 32–33. But the General Assembly made clear that non-reciprocal-state customers buying RVs in Indiana must pay our sales tax: "A transaction involving a . . . recreational vehicle [purchased from a non-reciprocal-state customer] is not exempt from the state gross retail tax." I.C. § 6-2.5-5-39(c). Indiana is the proper jurisdiction to receive sales tax on the Michigan Deliveries, and Richardson's has no power to abrogate that legislative policy decision by artificially shifting the point of physical delivery to a non-reciprocal state. *See Murray v. Conseco, Inc.*, 795 N.E.2d 454, 457 (Ind. 2003) ("[P]ublic policy is a matter for the General Assembly.").

Second, Richardson's asserts that it left unpaid the sales tax because it wanted to help customers avoid paying a double tax. But "[w]hen the purpose of a taxing act is plain, courts will not interfere. It is not permissible to ignore the words of the statute in order to avoid double taxation." *State Bd. of Tax Comm'rs v. Jewell Grain Co.*, 556 N.E.2d 920, 925 (Ind. 1990). Richardson's asks us to do just that: ignore the words of Indiana Code section 6-2.5-5-39(c)—that non-reciprocal-state customers must pay Indiana sales tax—to avoid double taxation.

Third, Richardson's claims that it failed to pay sales tax because doing so helped it maintain competitive pricing. Richardson's argues that choosing to not pay Indiana sales tax tracks "the Legislature's concern for the competitiveness of Indiana RV dealers." Resp.'s Br. at 38. But Indiana businesses cannot absorb—or completely ignore—sales tax to entice customers. *See* I.C. § 6-2.5-9-4 (establishing that sellers commit Class B infractions if they include sales tax in displayed prices or if they offer to assume, absorb, or refund tax). And this logic forecloses our form-over-

substance jurisprudence in the tax realm because any tax-avoidance strategy could constitute a legitimate business purpose since taxes inherently increase prices for customers.

Because Richardson's executed the Michigan Deliveries solely to avoid paying Indiana sales tax with no other legitimate business purpose, we reverse the Tax Court and enter summary judgment for the Department.

Still, the Tax Court must determine how much tax Richardson's owes on these Michigan Deliveries. In its motion for summary judgment, Richardson's asserted that the Department mathematically erred in calculating the total tax it would owe under the proposed assessments.[8] Because the Tax Court declined to address this argument when it held in favor of Richardson's, 80 N.E.3d at 299 n.7, we remand for it to determine the precise amount of tax Richardson's owes.

## II. The Tax Court must determine if the Non-Michigan Deliveries are taxable.

The Department also charged Richardson's with owing Indiana sales tax for deliveries it made to non-reciprocal-state customers in California, North Dakota, Nova Scotia, and Buchanan, Michigan.[9] The parties and the Tax Court treated these deliveries synonymously with the Michigan Deliveries.[10]

---

[8] Richardson's argued that the assessment of "Transaction #5 is overstated because the Department double-counted Transaction #5 by applying the $26,330.00 purchase price for that transaction to Transaction #2, which was $18,633.50." Resp.'s App. Vol. V, p.128.

[9] Although a common carrier delivered the RVs to North Dakota and Nova Scotia, "[d]elivery to common carrier in Indiana for shipment to another state by common carrier shall be deemed delivery to a purchaser in a state other than Indiana for purposes of applying the gross retail tax or use tax." 45 Ind. Admin. Code § 2.2-5-54(c)(1).

[10] *See* Resp.'s Br. at 9 n.1 ("All of the 155 RVs were physically delivered at White Pigeon, Michigan, except for 4 RVs which were delivered to other locations in California, Michigan, North Dakota, and Nova Scotia. . . . For ease of reference, this brief will refer to these delivery locations collectively as being in Michigan, as the Tax Court did.").

But they significantly differed. First, Richardson's delivered an RV to a customer at a sister-dealership in Menifee, California, about seventy-five miles from where the customer lived in San Diego and more than 2,100 miles away from Richardson's. Second, the North Dakota delivery was to a Canadian customer near the U.S.-Canada border, about 1,100 miles away from the dealership. Third, the RV delivered to Nova Scotia traveled about 1,500 miles from Richardson's. And fourth, the Buchanan, Michigan delivery shipped directly to a customer's home about fifty miles from the dealership.[11]

Even though these deliveries outwardly differ from the typical Michigan Deliveries, Richardson's designated no evidence showing any independent, non-tax-related business purpose that motivated them. So we remand to the Tax Court to determine that. If the Tax Court determines that any legitimate business purpose indeed prompted these Non-Michigan Deliveries, they are exempt from our sales tax under title 45, section 2.2-5-54(b) of the Indiana Administrative Code.

## Conclusion

Because "we are definitely and firmly convinced that an error was made," we reverse the Tax Court's grant of summary judgment for Richardson's and order summary judgment for the Department for the Michigan Deliveries. We remand, however, for a determination of the amount of tax Richardson's owes and for a determination of whether any independent, non-tax-related business purposes motivated the four Non-Michigan Deliveries.

Rush, C.J., and Goff, J., concur.
David, J., dissents with separate opinion in which Slaughter, J., joins.
Slaughter, J., dissents with separate opinion in which David, J., joins.

---

[11] We take judicial notice of the distances between Richardson's and these four delivery locations under our longstanding tradition of taking "notice of the geography of the country." *Hays v. State*, 8 Ind. 425, 426 (1856).

**David, J., dissenting.**

I respectfully dissent from Justice Massa's thoughtful majority opinion because I believe that Richardson's followed the letter of the law.   As the majority noted, ""[s]ales of tangible personal property which are delivered to the purchaser in a state other than Indiana for use in a state other than Indiana are not subject to gross retail tax or use tax." 45 Ind. Admin. Code § 2.2-5-54(b).  Here, there seems to be no dispute that the RVs at issue were delivered in Michigan.  As such, under the plain language of our administrative code, they are not subject to retail or use tax.  While the Department makes a policy argument that the spirit of the law was not complied with, Richardson's complied with the plain language of the regulation.  Accordingly, I do not believe the remedy for the Department is a judicial one.  Instead, the regulation needs to be revised.

I would affirm the Tax Court.


Slaughter, J., joins.

**Slaughter, J., dissenting.**

Like Justice David, whose opinion I join, I respectfully dissent from the Court's decision to impose excise-tax liability on Richardson's RV. The Court holds that Richardson's is liable for excise tax on sales of more than a hundred recreational vehicles physically delivered to buyers in Michigan. The excise tax at issue here is Indiana's gross retail tax, also known as the sales tax, which is imposed on retail transactions "made in Indiana." Ind. Code § 6-2.5-2-1(a). Transactions made elsewhere are not subject to this tax. According to the Department's own regulation, as long as the buyer does not intend to use the vehicle in Indiana, no tax is owed for vehicle deliveries made outside of Indiana. "Sales of tangible personal property which are delivered to the purchaser in a state other than Indiana for use in a state other than Indiana are not subject to gross retail tax or use tax, provided the property is not intended to be subsequently used in Indiana." 45 Ind. Admin. Code 2.2-5-54(b).

The Department does not claim that buyers of the disputed RVs intend to use their vehicles in Indiana. So the only issue is whether the RVs were delivered in a state "other than Indiana". The Court agrees that physical delivery of these vehicles occurred in Michigan but concludes that Richardson's had no legitimate business purpose for delivering them across the state line other than to avoid paying tax in Indiana. The Court thus calls these sales a "sham" and subjects them to Indiana's tax anyway. In my view, a taxpayer that structures its affairs to satisfy the law's strict letter should not be penalized for violating its spirit. I would hold that complying with the law is never a "sham", even if the result is to deprive the Department of tax dollars it would prefer to collect.

My vote to affirm the tax court's judgment has nothing to do with the applicable standard of review. As our Court recites, we have traditionally deferred to legal rulings by the tax court on matters of tax law because of that court's subject-matter expertise. I believe such deference is unwarranted within our hierarchical judiciary. It is one thing for a reviewing court to defer to a lower court's factual findings because of the judge's ability to assess witness credibility, to take just one example. But it is something else entirely to defer to a lower court's conclusions of law.

Just as it is "emphatically the province and duty of the judicial department to say what the law is", *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), the responsibility to serve as the final arbiter of Indiana law lies with us. That is what it means to be a "supreme" court.

In addition to the tax court, our state judiciary is replete with various specialized courts having responsibility over probate matters, commercial disputes, criminal cases, environmental issues, small-claims matters, traffic infractions, to name just a few. Do we likewise owe deference to the legal conclusions of these tribunals? Surely, the answer is no, and not because the judges who populate these courts lack subject-matter expertise, or because members of this Court necessarily have greater expertise in these areas. As Justice Jackson observed in *Brown v. Allen*, 344 U.S. 443 (1953), "We are not final because we are infallible, but we are infallible only because we are final." *Id*. at 540 (Jackson, J., concurring in judgment). As Indiana's court of last resort, we should reaffirm our supremacy to "say what the law is", and that includes Indiana's tax law.

I respectfully dissent.

David, J., joins.

ATTORNEYS FOR PETITIONER

Curtis T. Hill, Jr.
Attorney General of Indiana

Winston Lin
David C. Dickmeyer
Evan W. Bartel
Deputy Attorneys General
Indianapolis, Indiana

George M. Plews
Brett E. Nelson
Joshua S. Tatum
Steven A. Baldwin
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana

ATTORNEYS FOR RESPONDENT

Randal J. Kaltenmark
Mark J. Crandley
Ziaaddin Mollabashy
Barnes & Thornburg LLP
Indianapolis, Indiana